In re Charles J. WALTER, Jr., Debtor.

James R. Walsh, Esq.,
Trustee, Plaintiff,

v.

Thomas W. Gutshall and Vicki
Jo Gutshall, Defendants.

Bankruptcy No. 99–27349–BM.
Adversary No. 00–2060–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

Jan. 9, 2001.

James R. Walsh, Spence, Custer, Saylor, Wolfe & Rose, Johnstown, PA, for plaintiff.

Walter K. Swartzkopf, Foreman & Swartzkopf, Altoona, PA, for defendants.

## *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

The chapter 7 trustee maintains that, under the Pennsylvania Fraudulent Transfer Act ("PUFTA"), debtor Charles J. Walter, Jr. fraudulently conveyed real property he owned to defendants Thomas W. and Vicki Jo Gutshall. On behalf of debtor's bankruptcy estate, he seeks to recover from defendants the fair market value of the property at the time of the transfer.

Defendants deny that the conveyance was fraudulent. They assert that debtor received reasonably equivalent value in exchange for the transfer.

We conclude that the conveyance was fraudulent under PUFTA and will enter a judgment in the amount of $26,500.00 in favor of the chapter 7 trustee and against defendants.

## —FACTS—

Defendants are husband and wife. Debtor is the father of defendant Vicki Jo Gutshall.

On October 4, 1976, debtor and his wife at the time, Ethel M. Walter, conveyed to debtor alone a tract of real property located at 508 22nd Street in Altoona, Pennsylvania. Debtor used the property as his personal residence.

Defendants moved in with debtor in 1990 and continue residing there to date. They began making "improvements" to the property after moving in and did so on an intermittent basis over the course of the following several years.

On February 27, 1998, debtor executed a deed conveying the real property to defendants, who promptly had the deed recorded.

The property was free and clear of liens and encumbrances and had a fair market value of at least $26,500.00 at the time of the conveyance. Defendants borrowed the sum of $26,000.00 from Mid–State Bank in November of 1998 and granted it a mortgage against the property to secure payment of the debt.

Debtor filed a voluntary chapter 7 petition on October 4, 1999. He listed 508 22nd Street, Altoona, Pennsylvania, as his address on the petition.

The bankruptcy schedules identified assets, all of it personalty, with a total declared value of $4,676.00. Also listed were a secured debt in the amount of $2,723.00 incurred in June of 1998 and general unsecured debt in the amount of $26,726.00. Included among the latter was a debt in the amount of $9,385.00 owed to Mid–State Bank for a car loan to debtor's son for which debtor was jointly liable as co-signer. His son defaulted on the loan after making only one payment. The parties have stipulated that the conveyance effectively reduced the value of debtor's assets from $28,826.00 to only $2,326.00.

According to debtor's 1998 federal income tax return, his income for the year totaled $5,350.00, all but $9.00 of which was identified as pension income. No indication is contained therein that debtor received any income from social security payments during that year.

Debtor's schedules further indicate that his monthly living expenses as of the bankruptcy filing amounted to $1,261.00 whereas his monthly income consisted of $743.00 in social security payments and $395.00 in pension income, a monthly total of $1,318.00, only $123.00 more than his monthly expenditures.

Proceeding under the so-called "strong-arm" powers arising under 11 U.S.C. § 544(b)(1), the chapter 7 trustee brought

this adversary action against defendants under PUFTA, 12 Pa.C.S.A. §§ 5101 *et seq.* He seeks a determination that the above conveyance is fraudulent under 12 Pa.C.S.A. 5104 and/or 5105 and seeks to recover the value of the property conveyed to defendants as initial transferees in accordance with 11 U.S.C. § 550(a)(1).

The matter was tried without a jury on October 27, 2000, at which time both sides were given an opportunity to offer evidence on the issues in the case.

## —DISCUSSION—

Section 5104 of PUFTA provides in part as follows:

(a) General rule.—A transfer made ... by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made ..., if the debtor made the transfer ...:

(1) with actual intent to hinder, delay or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer ..., and the debtor:

(i) was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

12 Pa.C.S.A. § 5104 (Purdon's 1999).

A creditor who prevails under this provision may, among other things, avoid the

fraudulent transfer to the extent necessary to satisfy the creditor's claim. 12 Pa. C.S.A. § 5107(a)(1).

The chapter 7 trustee maintains, among other things, that debtor's conveyance of the above real property to defendants, who are debtor's daughter and son-in-law, was fraudulent under § 5104(a). He seeks to avoid the transfer pursuant to § 5107(a) and a judgment against defendants pursuant to § 550(a)(1)[1] in the amount of the value of the transferred property at the time of the transfer.

■ Evidence presented at trial compels the conclusion that the above conveyance by debtor to defendants was fraudulent under § 5104(a)(1). That is to say, debtor made the transfer with actual intent to hinder, delay or defraud at least one of his creditors.

Mid–State Bank is listed as having an undisputed claim in the amount of $9,385.00 arising out of a car loan to debtor's son for which debtor was jointly liable as a co-signer. His son defaulted on the loan after making only one payment.

■ Debtor testified on cross-examination that he conveyed the above property to defendants when he did so that Mid–State Bank could not "go after the house" to satisfy the debt. If ever there was a paradigm case of a transfer that was fraudulent in accordance with § 5104(a)(1), this is it. Debtor transferred the property to defendants because he wanted to hinder Mid–State Bank's anticipated collection effort. It is not necessary that debtor have intended to hinder all of his creditors for § 5104(a)(1) to apply; it is sufficient that he intended to hinder, delay or defraud

1. 11 U.S.C. § 550 provides in part as follows: (a) Except to the extent provided in this section, to the extent that a transfer is avoided under section 544 ... of this title, the trustee

may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property from— (1) the initial transferee of such transfer....

"any creditor". *In re Blatstein,* 192 F.3d 88, 97 (3d Cir.1999).

■ The matter does not end there. We further conclude that the above conveyance also was fraudulent under § 5104(a)(2)(ii). Debtor transferred the property to defendants without receiving in exchange any value whatsoever, let alone reasonably equivalent value, and at the very least reasonably should believed that he would incur debts beyond his ability to pay as they became due.

It is undisputed that debtor was in debt when he conveyed the above property to defendants. As a consequence, defendants have the burden of proving, by clear and convincing evidence, that they gave reasonably equivalent value to debtor in exchange for the conveyance. *Blatstein,* 192 F.3d at 98.

Defendants maintain that debtor received reasonably equivalent value in return for the above conveyance. According to defendants, they spent in excess of $18,000.00 of their own money and "completely redid the house" before debtor conveyed it to them. In so doing, defendants retort, they "added value" to the house, which was worth only approximately $10,000.00 when they moved in with debtor in 1990 and was worth at least $26,5000.00 when debtor conveyed it to them in February of 1998.

This argument is without merit. Debtor received no value, let alone reasonably equivalent value, as a result of any improvements defendants may have made to the property prior to when debtor conveyed it to them.

Section 5103 of PUFTA provides in part as follows:

(a) General rule.—Value is given for a transfer ... if, in exchange for the transfer ..., property is transferred....

(b) Reasonably equivalent value.—For purposes of sections 5104(a)(2) and 5105 ..., a person gives reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale or the exercise of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust or security agreement or pursuant to a regularly conducted, noncollusive execution sale.

12 Pa.C.S.A. § 5103.

Subsection 5103(a) does not provide an "exclusive" definition of the term "value". See Committee Comment (2)—1993. More precisely, it articulates a "general rule" rather than a definition for determining whether value was given for purposes of §§ 5104 and 5105. The "general rule" may be paraphrased as follows where a transfer is involved: value is given when a transferee transfers property to a transferor in exchange for the transferor's transfer of property to the transferee.

■ Whether or not value is present with respect to particular transfer must be determined in light of PUFTA's purpose to protect against depletion of a debtor's estate to the prejudice of the debtor's unsecured creditors. *Id.*

■ Moreover, not just any consideration given necessarily constitutes value in every instance. Consideration having no utility from the viewpoint of a creditor does not constitute value for purposes of § 5103(a) and, hence, for purposes of §§ 5104(a)(2) and 5105. *Id.* As is the case for § 548(d)(2) of the Bankruptcy Code, the test for determining whether value was given is purely objective. Committee Comment (1)—1993.

Applying these principles to the facts of this case, we conclude that the improve-

ments defendants claim they made to the property before debtor conveyed it to them do not constitute value, let alone reasonably equivalent value, for purposes of § 5104(a)(2). Considering that debtor turned around and conveyed the property to defendants without any further consideration given to debtor, we conclude that the alleged improvements had no utility whatsoever from the perspective of debtor's unsecured creditors. Defendants themselves were the only ones for whom the improvements had any utility.

The situation of debtor's unsecured creditors effectively is no different from their perspective than if debtor first had gratuitously conveyed the property to defendants as a gift and defendants thereafter made improvements to the property. Far from benefitting from the above events, debtor's unsecured creditors were prejudiced by the conveyance in that debtor's estate was depleted of an asset that might be used to satisfy their claims against debtor.

Not only did defendants not give any requisite value in exchange for the conveyance of the above property to them, we conclude that debtor believed at the time of the conveyance that he would incur debts beyond his ability to pay as they became due. Debtor's son, we noted previously, had defaulted on a car loan for which debtor was jointly liable. Apparently concerned that Mid–State Bank would seek to satisfy the debt by going against debtor's assets, debtor conveyed the above property to defendants with the intention of placing it beyond the reach of Mid–State Bank.

Even if debtor did not actually believe that he would be unable to pay his debts as they became due when he filed his chapter 7 petition on October 4, 1999, at the very least he reasonably should have so believed.

Debtor unquestionably was not able to pay the debts listed on his bankruptcy schedules as they became due in October of 1999. According to the bankruptcy schedules, debtor's monthly income at the time exceeded his monthly living expenses by only $123.00. Debtor's disposable income after he had paid his monthly living expenses unquestionably was insufficient for him pay his debts as they became due. Accordingly, debtor reasonably should have believed that he was not able in October of 1999 to pay his debts as they became due.

The same conclusion applies to debtor's ability (or lack thereof) in February of 1998 to pay his debts as they became due.

What evidence there is concerning debtor's income in 1998 indicates that it was considerably less at that time than it was in October of 1999. The sole indication of debtor's income in 1998 is found in his 1998 federal income tax return, on which he reported pension income for the entire year in the amount of $5,341.00. The line on the tax return reserved for indicating the amount of social security received in 1998 was left blank. From this we infer that debtor had no social security income in 1998.[2] Moreover, it is reasonable to assume that debtor's monthly expenditures in February of 1998 were not significantly different than they were in October of 1999. Debtor reluctantly conceded as much at trial.

Our conclusion concerning whether debtor reasonably should have believed that he was able in February of 1998 to pay his debts as they became due remains

---

**2.** We are reluctant to find that debtor had any social security income in 1998 in addition to his pension income. Such a finding would require us to assume that debtor misrepresented this matter on his tax return, an assumption we are not willing to make at this time.

unchanged even if we were to conclude that debtor did receive social security payments in 1998. The amount of these payments would be approximately the same as they were in 1999, perhaps even slightly less. Debtor still would have had very little, if any, disposable income with which to pay his scheduled debts as they became due in February of 1998. For him to believe that he nonetheless had the ability to pay these debts as they became due would not have been reasonable.

We conclude in light of the foregoing that the transfer of debtor's property to defendants that took place on February 27, 1998, was fraudulent under § 5104 of PUFTA and that the chapter 7 trustee therefore may avoid the transfer in accordance with § 5107(a)(1). Pursuant to § 550(a)(1) of the Bankruptcy Code, however, the chapter 7 trustee alternatively may recover from defendants the fair market value of the property transferred, which the parties have stipulated was $26,500.00 at the time of the conveyance. Instead of decreeing that the transfer is avoided, we will enter a judgment in this amount in favor of the chapter 7 trustee and against defendants.

An appropriate order shall issue.

### ORDER OF COURT

**AND NOW,** this **9th** day of **January,** 2001, in accordance with the foregoing memorandum opinion, it hereby is **ORDERED, ADJUDGED,** and **DECREED** that:

(1) debtor's conveyance of real property located at 508 22nd Street, Altoona, Pennsylvania, to defendants Thomas W. Gutshall and Vicki Jo Gutshall on February 27,1998, was **FRAUDULENT** under 12 Pa.C.S.A. § 5104(a); and

(2) in accordance with 11 U.S.C. § 550(a)(1), **JUDGMENT** in the amount of $26,500.00 hereby is entered **IN FA**-VOR OF James R. Walsh, chapter 7 trustee, and **AGAINST** defendants Thomas W. Gutshall and Vicki Jo Gutshall.

It is **SO ORDERED.**