MALONE, TRUSTEE, APPELLANT, *v.* SUMMER & Co., APPELLEE.

(No. 9143—Decided September 24, 1968.)

*Mr. Daniel F. Carmack,* for appellant.
*Mr. George R. Wolfe,* for appellee.

TROOP, J. A motion to dismiss this appeal pending at the time of oral hearing was submitted for disposition along with the appeal upon the merits. Appellee, Summer & Co., predicates its motion to dismiss on a lack of jurisdiction in this court to hear "an appeal from a" case "that never existed." The line of reasoning followed by counsel for the appellee needs examination, especially since counsel relies heavily upon Judge Guernsey's decision in *Roof* v. *National Surety Corp.* (1952), 92 Ohio App. 295, in support of his position.

Counsel urges that Summer & Co. filed a motion to strike the pleadings from the file, which motion was upheld by Judge Duncan. The pleading to which the motion to strike was addressed was the petition of the plaintiff in the trial court, C. William Malone, trustee in bankruptcy. Complete accuracy requires that the decision of Judge Duncan, April 29, 1968, be reported as "considering defendant's motion as a demurrer finds it well taken, and is sustained. Case dismissed."

All too commonly a motion to strike pleadings is used with reckless abandon. The sole function of a motion to strike pleadings is to test the regularity of the filing. In comparision, the demurrer goes to the substance of the

pleading testing its legal sufficiency. A demurrer is also appropriate as an attack on the jurisdiction of the court. (See 43 Ohio Jurisprudence 2d, 210 and 211, Sections 196 and 197, and page 285, Section 270.)

Judge Guernsey, in *Roof, supra,* calls attention to the peculiar facts in the case before him and at the conclusion of his opinion, at page 300, says:

"The practice of courts in treating motions to strike as a means of testing the sufficiency of pleadings has been condemned by the Supreme Court. * * *"

Treating the motion to strike as a demurrer was clearly permissible. The judgment entered by Judge Duncan sustaining the demurrer and dismissing the case was a final appealable order.

The appellee's motion to dismiss this appeal is overruled.

The plaintiff in the trial court sought to recover a payment made on an antecedent debt of his bankrupt to the defendant in the trial court, Summer & Co. It is alleged that the bankrupt was insolvent at the time of payment. This and other allegations, if established, would bring the claimed payment within the purview of preference as defined in Section 60 of the federal Bankruptcy Act (Section 96, Title 11, U. S. Code). A motion to strike, held to be a demurrer, was directed to the petition, designed to test the jurisdiction of the Franklin County Municipal Court in the action seeking the recovery of money paid to the defendant by the plaintiff's bankrupt.

A single assignment of error is the basis for this appeal from the final order of the trial court dismissing the plaintiff's petition. The basic error assigned is that the trial court had jurisdiction and therefore mistakenly sustained the demurrer and dismissed the action. Supporting arguments are, (1) the court did not interpret Section 60 (b) of the federal Bankruptcy Act correctly, (2) Congress may invest Ohio courts with jurisdiction in such matters, and (3) Ohio courts may not constitutionally refuse to exercise such jurisdiction when granted by Congress.

Assignments of error numbered two and three need but passing comment. It goes without saying that the Con-

gress may confer jurisdiction on state courts. That state courts must exercise such jurisdiction is, however, an entirely different matter. Jurisdiction conferred on state courts by the constitution and laws of the state concerned is the only jurisdictional requirement state courts are obliged to follow.

This discussion is concerned with assignment of error numbered Sub-Topic I and the ramifications thereof. The closing sentence in Section 60(b) of the federal Bankruptcy Act supplies the nub of the problem. It is as follows:

"For the purpose of any recovery or avoidance under this section, where plenary proceedings are necessary, any State court which would have had jurisdiction if bankruptcy had not intervened and any court of bankruptcy shall have concurrent jurisdiction."

Bankruptcy did intervene in the instant case, so the question becomes simply did the trial court have jurisdiction in such a case, where a plaintiff-creditor's representative seeks to recover money paid by an alleged insolvent debtor in settlement of an antecedent debt, regardless of such intervention.

The simple question as to whether a Municipal Court is a state court and an appropriate forum presents no particular difficulties. If this is an action for the recovery of money Section 1901.18, Revised Code, provides that a Municipal Court has jurisdiction as follows:

"(B) In any action or proceeding at law for the recovery of money or personal property of which the Court of Common Pleas has jurisdiction."

Attention is directed to Section 1313.56, Revised Code, by the trial court. The language used in the section appears to provide the reasons for the conclusions reached by the trial court and the basis for its judgment. One sentence taken from the section, emphasized and underlined by the trial court, seems to have compelled the resulting dismissal of the action. It reads as follows:

"In a suit brought by a creditor of such debtor for the purpose of declaring such sale void, a receiver may be appointed * * *."

The quoted language upon which the trial court relied

suggesting the appointment of a receiver, at first blush, clearly destroys the possibility of calling the action simply one for the recovery of money and removes the cause from the jurisdictional limits of a Municipal Court.

By way of introduction to a discussion of the breadth of purpose and possible actions under the statute from which the trial court quotes, it is well to note that a receiver *may* be appointed who shall take charge of all of the assets of the debtor and administer them for the equal benefit of all of the creditors. The "may" allows a proper court discretion and it follows that it well might choose a trustee in bankruptcy to recover and administer all of the assets for the benefit of all of the creditors especially when his duly constituted function is already just that.

As the trial court quite aptly put it, however, we agree that "this case has ominous legal characteristics lurking in the shadows of certain federal and state statutes which are difficult to identify and categorize." Nevertheless, this discussion will attempt to survey, in a limited way, some available materials.

Several rather simple direct propositions seem to be clearly established in the language of text materials, congressional enactment, and court decisions, as follows:

(1) The Congress has properly conferred jurisdiction on state courts in suits to set aside and recover preferences and fraudulent transfers.

(2) When a plenary action is necessary to a recovery it is not an integrant part of bankruptcy procedure but is separate and identifiable and may be brought in a state court.

(3) Such a plenary action may be brought in a state court when, and only when, the law of the state permits recovery in matters of fraud or preferance.

Typical of the materials bearing upon and supporting the three propositions, each item being concerned with one or more of the three, are as follows:

Text material from 9 American Jurisprudence 2d 869, Section 1170, reads as follows:

"A suit to recover a preference constitutes no part of the proceeding in bankruptcy, but concerns controversies

arising out of it. Where a plenary suit is necessary, it may be brought in a state court, although the bankruptcy court has concurrent jurisdiction. * * *''

And, at age 870, Section 1172 reads as follows:

''Since 1910 federal bankruptcy courts and state courts have had concurrent jurisdiction of suits to set aside preferences under Section 60(b), * * * of the Act. Bankruptcy Act Section 60(b) provides in reference to preferences that, for the purpose of any recovery or avoidance under Section 60 of the Act, where plenary proceedings are necessary, any state court which would have had jurisdiction if bankruptcy had not intervened and any court of bankruptcy shall have concurrent jurisdiction. * * *''

The L. Ed. headnotes to *Schoenthal* v. *Irving Trust Co., Trustee* (1932), 287 U. S. 92, 77 L. Ed. 185, 53 S. Ct. 50, read as follows:

''2. A suit to recover a preference constitutes no part of the proceeding in bankruptcy, but concerns controversies arising out of it.

''3. Suits to recover preferences may be brought in the state courts as well as in the bankruptcy courts.''

The position of a trustee as to the creditors of his bankrupt is pointed out in *In re Gustav Schaefer Co.* (1939), 103 F. 2d 237, as follows, in the headnotes:

''6. The bankruptcy trustee represents the general creditors and in that capacity may assert claims, avoid preferences and collect assets where the bankrupt, if bankruptcy had not intervened, would be estopped. * * *''

Several cases emphasize the concurrent jurisdiction of state and bankruptcy courts and the necessary involvement of jurisdictional opportunity under the statutes of states. Briefly, in *Gonterman* v. *Nicholas as Trustee in Bankruptcy* (1959), 270 F. 2d 509, the court states that ''federal courts must look to state law,'' and in *Beall* v. *Pinckney* (1945), 150 F. 2d 467, a slightly different statement—''the right to be tried is to be tested by state law governing fraudulent conveyances.'' In a more recent case, *Coleman, Trustee in Bkcy.,* v. *Alcock* (1960), 272 F. 2d 618, the pertinent paragraph of the headnotes reads as follows:

64

"8. In suit to set aside transfers in fraud of creditors under Florida laws, both Florida statutes were open to trustee if he could make requisite proof on underlying substantive elements of fraud or preferential payment during insolvency and existence of some one actual creditor who (1) had provable claim and (2) was within class of creditors protected under Florida statutes. * * *"

The case of *Irwin* v. *Maple* (1918), 252 F. 10, makes reference to and respects Ohio law and is, therefore, important to this discussion. The rule in the headnotes is as follows:

"3. Ohio statutes relating to preferential transfers (Gen. Code Ohio Section 11104) are not in effect bankruptcy laws themselves, and so were not suspended by the national Bankruptcy Act."

Paragraph nine of the headnotes also recognizes and gives effect to Ohio law. The court discusses Ohio law at considerable length noting particularly an Ohio case, *National Bank of Commerce* v. *Gettinger* (1903), 68 Ohio St. 389. At page 18 in *Irwin*, the court notes certain words contained in Section 6343 of Ohio Revised Statutes as amended in 1898, which recur in decisions with sufficient frequency that they should be particularly noted. They introduce the section and are as follows:

"Every sale, conveyance, transfer, mortgage or assignment, * * * made * * *, by a debtor * * *, in contemplation of insolvency, or with a design to prefer one or more creditors * * *."

The court concluded that the specific transactions set out in the statute were denounced as preferences and that a payment of money was not named as one of the objectionable transactions and not recoverable, therefore, under Ohio law.

At this point it is necessary to carefully examine the "complexities" of Ohio law in order to discover whether Ohio law is exactly the same now as it was fifty years ago. In *Carruthers* v. *Kennedy* (1929), 121 Ohio St. 8, the court summarizes the history of possibly applicable Ohio statutes and, at page 15, refers to *National Bank of Commerce, supra*, and says that the decision "held that Section 6343

was not intended to prevent payments of the just amounts due to lawful creditors." (See also 9 Ohio State Law Journal, beginning at page 571.)

Some points of interest in the history of Sections 13-13.56 and 1313.57, Revised Code, are noteworthy. In 1859, the basic law was enacted as Ohio Revised Statutes, Sections 6343 and 6344. (56 Ohio Laws 235.) In 1898, the sections were amended (93 Ohio Laws 290) and additions and changes made. At this point we note the listing of the specific transactions, set out above, sale, etc., which if accomplished with a design to prefer, or done with intent to hinder, delay or defraud a creditor are clearly voidable and recoverable. Again, in 1902 there were amendments and the element of the good faith of the parties, or knowledge of fraud or insolvency by the grantee, was added as a requirement necessary to a transaction in order to permit a recovery.

The *National Bank of Commerce case, supra,* noted was decided in 1903, which decision stressed the listed transactions as being controlling.

A codification came in 1910 and the sections noted became Ohio General Code Sections 11104 and 11105. The essentials of Section 6343, Revised Statutes, were retained in Section 11104, General Code, including the listing of specific transactions, and the provision for the appointment of a receiver in a creditor's action, to which the trial court paid particular attention, was added. Section 11105, General Code, contained as an essential to action under Section 11104 the good faith of the parties. The basis for the decision in *Carruthers, supra,* was that the intent to prefer was wholly and solely that of the vendor. The innocence of the vendee precluded the voiding and recovery.

In 1935, the Ninth District Court of Appeals decided *Erie Rd. Co.* v. *Fulton,* 19 Ohio Law Abs. 70, a case involving bank liquidation. The court cited and followed *National Bank of Commerce, supra,* holding that the payment of an honest debt in cash or current exchange was lawful in Ohio under common law and Section 11104, General Code. At approximately the same date, the Court of Appeals for Butler County decided *Flanagan* v. *Sloneker,*

*Trustee* (1935), 52 Ohio App. 37, holding that a payment made by an insolvent debtor to endorsers of a note was a preference under the bankruptcy act. Paragraph one of the syllabus speaks squarely in point as to the instant case. Finding the payment to be a preference the court says, as follows:

"* * * such payment is a voidable preference, and the trustee in bankruptcy can recover the amount from the endorsers."

The court also held that circumstantial evidence could be used to show that the endorsers "had reasonable cause to believe that the transfer would effect a preference."

An examination of the decision in *Flanagan, supra,* fails to disclose any reference to a previous Ohio decision or any reference to any statute upon which the result reached is predicated. Still more baffling is the fact that the decision appears to stand as the final word in Ohio as concerns actions by trustees in bankruptcy to recover the payment of money paid by a bankrupt while insolvent.

At this point the "omnibus" character of this inquiry seems to appear and we agree with the trial court that "lurking in the shadows" are many difficulties. The trial court also observes that its review revealed no other statute which would accommodate this plaintiff's action. At this point departure is necessary. Sections 1313.56 and 1313.57, Revised Code, are a part of the chapter titled "Voluntary Assignments; Bulk Sales," the background for which is noted above.

An entirely new chapter titled "Fraudulent Conveyances" and numbered 1336 became effective October 23, 1961. It is a part of the Ohio Uniform Commercial Code. That the Legislature was aware of bankruptcy situations is evident from a definition appearing in Section 1301.01 (W), Revised Code, although it is not made applicable specifically to Chapter 1336. It reads as follows:

"A person is 'insolvent' who either has ceased to pay his debts in the ordinary course of business or cannot pay his debts as they become due or is insolvent within the meaning of the federal bankruptcy law."

Section 1336.02, Revised Code, provides the definition of insolvency for the Fraudulent Conveyances chapter.

The codifiers indicate that the forerunner of Chapter 1336, Revised Code, is Section 1335.02, Revised Code, a part of the Statute of Frauds chapter, which read in part as follows:

"Every gift, grant or conveyance of lands * * *, made * * * with intent to defraud creditors of their just and lawful debts * * *, is void."

Bearing in mind that Ohio courts held in past decisions that a payment of cash was not among the specific transfers listed in the older statutes and therefore not recoverable the definition included in Chapter 1336, Revised Code, is extraordinarily striking. Section 1336.01 (B), Revised Code, reads as follows:

" 'Conveyance' includes every payment of money, * * * "

Substituting the definitions section word "payment" for "conveyance," Section 1336.07, Revised Code, would then read as follows:

"Every payment made * * * with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present or future creditors."

Section 1336.09, Revised Code, outlining the remedies available to attain recovery is not too clear, but the intent of the chapter is clearer after reading Section 1336.11, Revised Code, which reads as follows:

"In any case not provided for in Sections 1336.01 to 1336.12, inclusive, of the Revised Code, the rules of law and equity including the law merchant, and in particular the rules relating to the law of principal and agent, and the effect of fraud, misrepresentation, duress, or coercion, mistake, bankruptcy, or other invalidating cause shall govern."

After the enactment of Chapter 1336, Revised Code, the United States Sixth Circuit Court of Appeals decided *In re Berman & Co., Bankrupt* (1965), 343 F. 2d 125, which involved an application of Ohio law in the matter of an

insolvent and bankrupt Ohio corporation. The court held that the referee had correctly summarized the law of Ohio. The quote from the referee reads in part as follows:

" '* * * an insolvent corporation which has ceased to do business can not by transfer of its property to one of its creditors in payment of antecedent debts create a valid preference to that creditor over its other creditors. When such a situation occurs, the property transferred may be traced and recovered unless the holder is a bona fide purchaser for value, and without notice.' "

True, the court cited Section 1313.56, Revised Code, and the conveyance was the assignment of a claim against an insurance company arising out of a fire loss. The claim was not a "payment" of cash or currency but there is a striking resemblance to cold cash in such a claim.

The Supreme Court has not overruled *Flanagan, supra,* and until it does so the rule in *Flanagan* still stands. Chapter 1336, Revised Code, presently prevails, and it makes clear that "payment" is included in the term conveyance which adds a new transaction to the lists contained in the older statutes. Sections 1336.07 and 1336.11, Revised Code, combine to permit a trustee in bankruptcy, as the representative of a creditor, or creditors, of an insolvent debtor and bankrupt, to pursue an action at law for the recovery of money paid in an Ohio court with appropriate jurisdiction.

Such a trustee must necessarily forego the help of any favorable presumptions available in an action in the bankruptcy court and assume the burden of proofs required of him under Ohio law, but there is no logical or legal reason why he should be denied the opportunity to do so.

The judgment of the trial court is reversed and the cause remanded for reinstatement and trial according to law.

*Judgment reversed.*

Duffey, P. J., and Herbert, J., concur.