LOCAFRANCE UNITED STATES CORPORATION, APPELLEE, *v.* INTERSTATE DISTRIBUTION SERVICES, INC. ET AL., APPELLANTS.

[Cite as Locafrance United States Corp. *v.* Interstate Dist. Serv., Inc. (1983), 6 Ohio St. 3d 198.]

(Nos. 82-91 and 82-109—Decided August 10, 1983.)

*Messrs. Cooper, Straub, Walinski & Cramer* and *Mr. H. Buswell Roberts, Jr.,* for appellee.

*Mr. George R. Royer,* for appellant Mid-American Warehouse, Inc.

*Mr. John G. Rust,* for appellant Interstate Distribution Services, Inc.

*Mr. Irwin M. Echtman,* for appellant Express Warehouse, Inc.

CELEBREZZE, C.J. The issue presented is whether punitive damages and attorney's fees were properly awarded to Locafrance. For the following reasons, we conclude that the trial court was correct in making these awards.

In reaching this conclusion, our first consideration is whether a fraudulent conveyance existed upon which to base the damages. Appellants

contend that the transfer of warehouse customer accounts was not a conveyance within the meaning of R.C. Chapter 1336.[1]

A fraudulent conveyance is defined in R.C. 1336.07 as: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present or future creditors."

The term "conveyance" is defined in R.C. 1336.01(B) which provides that: " 'Conveyance' includes every payment of money, assignment, release, transfer, lease, mortgage, or pledge of tangible or intangible property, and also the creation of any lien or encumbrance."

Applied to this situation, the pertinent language is "transfer * * * of tangible or intangible property * * *." The question is whether the warehouse accounts, which were transferred, are tangible or intangible property. The court of appeals noted that Interstate's long-term customers produced a steady income and that many became customers of Mid-American and Express when Interstate ceased operations. Thus, the customer accounts provided a potentially valuable resource to Mid-American and Express and come within the statutory language of "tangible or intangible property."

The trial court concluded that: "The decision to wind down was made in light of and to avoid the Locafrance judgment." The court quoted the following resolution of Interstate's board of directors: "Whereas, Locafrance U.S. Corporation, has obtained a judgment against this Company for substantial damages and for the replevin of a considerable number of forklift trucks and other equipment necessary for the continued conduct of the operations of the company in Toledo, and * * *. Resolved, that in view of the judgment of replevin and damages obtained against this company by Locafrance U.S. Corporation * * *."

Therefore, the facts meet the statutory requirements in R.C. 1336.07 for a fraudulent conveyance. The customer accounts are a conveyance, within the definition set forth in R.C. 1336.01(B), and were conveyed with actual intent to hinder creditors.

Appellants contend that if a fraudulent conveyance occurred, the statutes do not allow for punitive damages and attorney's fees. Furthermore, they maintain that the facts do not warrant sustaining such damages.

Punitive damages and attorney's fees are not specifically authorized by R.C. 1336.09 or 1336.10, the remedy sections in R.C. Chapter 1336.[2]

---

[1] Ohio adopted the Uniform Fraudulent Conveyance Act, effective October 23, 1961.

[2] R.C. 1336.09 provides:

"(A) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser:

"(1) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim; or

However, the courts below found that R.C. 1336.11 broadens the scope of the Act to permit the application of the law of fraud which allows such awards in appropriate cases.

The court of appeals relied on *Malone* v. *Summer & Co.* (1968), 17 Ohio App. 2d 58 [46 O.O.2d 73], for this conclusion. R.C. 1336.11 was construed as permitting the trustee in bankruptcy to rely on common-law remedies when an insolvent corporation transferred property.

R.C. 1336.11 provides that, "[i]n any case not provided for in sections 1336.01 to 1336.12, inclusive, of the Revised Code, the rules of law and equity including the law merchant, and in particular the rules relating to the law of principal and agent, and the effect of fraud, misrepresentation, duress, or coercion, mistake, bankruptcy, or other invalidating cause shall govern."

The appellate court's construction of R.C. 1336.11, which allowed the application of common-law remedies not set forth in this statute, is reasonable.[3] Otherwise, the purpose of this section is questionable.

Public policy supports this interpretation of the statute. "The purpose of the Uniform Fraudulent Conveyance Act is primarily for the benefit of creditors, not grantees. It is a remedial statute and a liberal construction should be given it to accomplish its purpose of giving speedy relief against a fraudulent debtor." *Running* v. *Widdes* (1971), 52 Wis. 2d 254, 259, 190 N.W. 2d 169.

Because the action herein is not specifically provided for in either of the remedy sections, R.C. 1336.11 allows that the rules of law and equity may

---

"(2)  Disregard the conveyance and attach or levy execution upon the property conveyed.

"(B)  A purchaser, who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment."

R.C. 1336.10 provides:

"Where a conveyance made or obligation incurred is fraudulent as to a creditor whose claim has not matured he may proceed in a court of competent jurisdiction against any person against whom he could have proceeded had his claim matured, and the court may:

"(A)  Restrain the defendant from disposing of his property;

"(B)  Appoint a receiver to take charge of the property;

"(C)  Set aside the conveyance or annul the obligation; or

"(D)  Make any order which the circumstances of the case may require."

[3] There appear to be relatively few cases concerning the application of common-law remedies under the statute. The Supreme Court of Pennsylvania stated that: "As this act does not specify a particular course of procedure, that previously existing and any necessary modification thereof, may be adopted, in order to enable the one attacking the 'conveyance' to obtain the rights accorded by the statute." *Schline* v. *Kine* (1930), 301 Pa. 586, 591, 152 A. 845.

We recognize that punitive damages have not been allowed in fraudulent conveyance actions in some other jurisdictions. The Colorado Supreme Court refused to allow punitive damages and concluded that its statute allows only for the voiding of a conveyance. *Miller* v. *Kaiser* (1967), 164 Colo. 206, 433 P. 2d 772. C.R.S. 1963, 59-1-17, a part of the Colorado statute of frauds, provided that fraudulent conveyances "shall be void." Compared to Colorado's single remedy, Ohio's version of the Uniform Fraudulent Conveyance Act is more comprehensive and provides several remedies. See R.C. 1336.09, 1336.10 and 1336.11.

govern. We hold that common-law remedies, including the law of fraud, may be applied when appropriate in fraudulent conveyance cases pursuant to R.C. 1336.11.

Previous case law has established that punitive damages and attorney's fees are permissible in cases of fraud involving malicious and intentional conduct. The requirements for punitive damages were set forth in paragraph one of the syllabus in *Columbus Finance* v. *Howard* (1975), 42 Ohio St. 2d 178 [71 O.O.2d 174], as follows: "In an action for wrongful execution, actual malice, fraud or insult on the part of the wrongdoer must be shown in order to justify an award of punitive damages."

The court defined actual malice, at page 184, to include " 'intentional, reckless, wanton, wilful and gross acts which cause injury to persons or property.' " In *Detling* v. *Chockley* (1982), 70 Ohio St. 2d 134, 138 [24 O.O.3d 239], this court also stated that actual malice signifies, *inter alia,* intent, deliberation or a willful design to do another injury. Thus, recent pronouncements of this court are consistent in defining malice to include intentional or deliberate behavior.

Moreover, the court in *Detling, supra,* stated, at page 136, that, "[t]he rationale for allowing punitive damages has been recognized in Ohio as that of punishing the offending party and setting him up as an example to others that they might be deterred from similar conduct: 'The principle of permitting damages, in certain cases, to go beyond naked compensation, is for example, and the punishment of the guilty party for the wicked, corrupt, and malignant motive and design, which prompted him to the wrongful act.' " (Citations omitted.)

Applying these principles to the case *sub judice,* Interstate ceased operations and transferred its accounts to two successor corporations with essentially the same business, employees and facilities. The trial court found that Interstate's decision to wind down was designed, in part, to avoid the Locafrance judgments against it. Thus, the record indicates that Interstate's actions were willful, intentional and deliberate as required by this court's definition of malice for an award of punitive damages. We conclude that there was sufficient evidence of malice to warrant imposition of punitive damages. Alternatively, Interstate's conduct, by definition of a fraudulent conveyance set forth in R.C. 1336.07, constitutes a fraud, as required by *Howard, supra,* for an award of punitive damages.

Considering the facts in this case, punitive damages are appropriate to deter the delinquent judgment debtor from attempting to avoid paying the judgments. Setting aside the conveyance and other remedies set forth in R.C. 1336.10 and 1336.11 would not be a sufficient deterrent to discourage appellants and other debtors from making fraudulent conveyances to avoid creditors. Without punitive damages as a deterrent, the purpose of the Fraudulent Conveyance Act would be severely weakened.

Furthermore, this court has concluded that, "[i]f punitive damages are proper, the aggrieved party may also recover reasonable attorney fees."

*Howard, supra,* at 183. Therefore, we find that punitive damages and attorney's fees were properly awarded by the trial court.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

W. BROWN, SWEENEY, PRYATEL, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.

PRYATEL, J., of the Eighth Appellate District, sitting for LOCHER, J.