DECISION AND JUDGMENT ENTRY
{¶ 1} Defendants/Appellants Danny L. Simms I and II appeal from the Athens County Court of Common Pleas' award of compensatory and punitive damages to Appellees, Leonard and Donna McCollister and Ralph and Teena Jolley. Appellants argue that the trial court committed error in allowing the issue of punitive damages to be tried and also erred in assessing compensatory damages against them. Because we find that the Appellees' complaint sufficiently alleged facts to support a punitive damage claim and to put Appellants on notice of the need to defend against such a claim, we reject Appellants' first assignment of error. Likewise, because we find that the trial court's award of compensatory damages is supported by competent, credible evidence, we find Appellants' second assignment of error to be without merit. Accordingly, we affirm the award of compensatory and punitive damages, as determined by the trial court.
 I. Facts. {¶ 2} In October of 2003, Appellants, Danny L. Simms, and his son, Danny L. Simms II, blocked a railroad drainage culvert located on their property. The drainage culvert served as a drainage way for several of the surrounding properties, including the properties of Appellees, Ralph and Teena Jolley and Leonard and Donna McCollister. Appellants claim they blocked the culvert because they believed sewage was draining from Appellees' property, through their drainage culvert, and into the fresh water ponds on their property. Appellants admit that they knew that the result of their actions would cause the water to flood Appellees' properties, but claim that the Athens City-County Health Department failed to resolve the situation. Appellants also claim that they were legally entitled to block the drainage culvert because it was located on their property.
 {¶ 3} On December 2, 2003, the Athens Planning Commission and County Engineer filed a complaint and request for injunction ordering Appellants to remove the blockage from the drainage culvert. The Athens City-County Health Department was added as a party plaintiff on February 23, 2004. Appellees' motion to intervene in the action was granted on March 2, 2004, and a final amended complaint, including all seven plaintiffs was filed the same day. Appellees alleged five causes of action in their complaint, which included (1) unlawful interference with a natural watercourse; (2) nuisance; (3) quiet title; (4) trespass; and (5) preliminary and permanent injunction. In their complaint, Appellees alleged that Appellants' deliberate, knowing, willful and unlawful actions had caused and was continuing to cause damage to their lands, buildings, septic systems and water wells. Appellees essentially requested compensatory damages and specifically requested attorney fees as well as "all other and further relief as is authorized by law, and that is just and appropriate."
 {¶ 4} Several hearings were conducted, beginning on June 8, 2004, and ending on April 6, 2005. All parties appeared at the June 8, 2004, hearing, including Appellant Danny Simms. At this hearing, Appellant admitted that he had blocked the culvert, that his actions flooded the Appellees' properties, and that he did not seek a permit to block the culvert. Even though this hearing was to determine whether or not the trial court should grant thepreliminary injunction, Appellees stated their intent, on the record in open court, to request punitive damages. Appellants did not object to this request, nor did they request that the pleadings be amended. As a result of the evidence presented at the June 8, 2004, hearing, on July 9, 2004, the trial court entered its decision granting Appellees' request for a preliminary injunction, based on Appellants' intentional and unreasonable actions, which created nuisances. The trial court, at that time, ordered Appellant to remove the blockage of the drainage culvert. However, at the time of the September 2, 2004, bench trial, the drainage culvert remained blocked due to Appellants' refusal to comply with the court's order, which ultimately led to Appellants being found in contempt.
 {¶ 5} Although their counsel was present, Appellants failed to appear at the bench trial. At the beginning of the hearing, before any witness testimony was offered, Appellees informed the court that there would be a claim for future damages, in light of the fact that the full damages could not be determined because the properties remained flooded because the drainage culvert was still blocked. They again informed the court of their intent to seek punitive damages, to which Appellants' counsel made no objection. At this hearing, Appellees provided some initial testimony regarding their claimed compensatory damages, including the loss of use of their properties. Appellees restated, at the conclusion of the hearing, their intent to seek punitive damages and renewed their request to present additional damages at a later time because the Appellants still refused to open the drainage culvert. Appellants' counsel contested the merits of the punitive damage claim, arguing that there was no evidence of malice; however, he did not object to the issue going forward. Rather, he objected, in general, to Appellees' request that additional damages hearings be held. As a result of this hearing, the trial court made the preliminary injunction permanent and determined that the Appellants' actions constituted a nuisance.
 {¶ 6} The trial court permitted additional damage hearings, which were held on March 25, 2005, April 1, 2005, and April 6, 2005. At these hearings, the Jolleys presented evidence to support their loss of use damages, including the cost of renting a house, water bills and their inability to use their property for family gatherings. They also presented evidence of the attorney fees they had incurred. The McCollisters presented evidence of loss of use of their property, including their inability to utilize their toilets, water well and outbuilding. They also presented evidence regarding damage done to a trailer they own that is on their property, as well as attorney fees they had incurred.
 {¶ 7} In an attempt to mitigate Appellees' damages, Appellants presented evidence, in the form of testimony from various individuals, who claimed that the Appellees' properties flooded prior to Appellants blocking the drainage culvert. Appellants seemed to be trying to establish that the properties flooded on a regular basis; however, a review of the testimony indicates that Appellants' witnesses merely testified that the property flooded approximately twice a year and none could testify as to how long it usually took for the properties to drain. This testimony was not inconsistent with Appellees' testimony.
 {¶ 8} At the conclusion of all the damages hearings, the trial court ordered that the parties brief the issue of damages. It was not until this point that Appellants objected to the allowance of the punitive damages claim, arguing that punitive damages were never pled or prayed for in the complaint. Nevertheless, the trial court entered its decision on damages on May 13, 2005, granting both compensatory and punitive damages to the Appellees herein.[2]
 II. Assignments of Error. {¶ 9} It is from the trial court's award of compensatory and punitive damages that Appellants bring their appeal, assigning the following errors for our review.
 {¶ 10} "I. THE COURT COMMITTED ERROR IN ALLOWING THE ISSUE OF PUNITIVE DAMAGES TO BE TRIED.
 {¶ 11} II. THE COURT COMMITTED ERROR IN ASSESSING DAMAGES AGAINST THE APPELLANT-DEFENDANTS."
 III. Law Analysis {¶ 12} We begin our analysis by noting that the initial action arose in the court below as a result of a surface water dispute between Appellants and Appellees. The Supreme Court of Ohio has adopted a reasonable-use rule to be used in the resolution of surface water controversies. McGlashan v. SpadeRockledge Corp. (1980), 62 Ohio St.2d 55, 402 N.E.2d 1196, syllabus. In reference to the interference with the flow of surface waters, the Ohio Supreme Court has held that a possessor of land is not unqualifiedly privileged to deal with surface water as he pleases, nor is he absolutely prohibited from interfering with the natural flow of surface waters to the detriment of others. Rather, under the reasonable-use rule, each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others. McGlashan, supra. He incurs liability only when his harmful interference with the flow of surface water is unreasonable. Mays v. Moran (March 18, 1999), Ross App. Nos. 97CA2385 and 97CA2386, 1999 WL 181400; citingMcGlashan, supra, quoting Kinyon McClure, Interferences with Surface Waters (1940), 24 Minn.L.Rev. 891, 904.
 {¶ 13} As we noted in Mays, in determining the reasonableness of an interference, the trier of fact is to be guided by the rules stated in 4 Restatement of the Law 2d, Torts (1965) 108-142, Sections 822-831. Mays, supra. To determine the reasonableness of an invasion, courts must balance the gravity of the harm caused by the interference against the utility interferer's conduct. 4 Restatement of the Law 2d, Torts (1965), 108-142, Sections 822-831. This court has previously noted that ultimately, the unreasonableness of the invasion is a problem of relative values to be determined by the trier of fact in each case in light of all of the circumstances of that case. Mays,
supra, citing 4 Restatement of the Law 2d, Torts (1965) 120, Section 826 Comment b.
 {¶ 14} "`Liability for unreasonable interference with surface water arises through: (1) an act; or (2) failure to act under circumstances in which the actor is under a duty to take positive action to prevent or abate the interference. Ferguson v.Breeding (Aug. 25, 2000), Lawrence App. No. 99CA22, 2000 WL 1234262; citing Heiner v. Kelley (July 23, 1999), Washington App. No. 98CA7, 1999 WL 595363, quoting 4 Restatement of the Law 2d, Torts (1965) 118, Section 824. A review of several pertinent facts in the case at bar supports a finding of liability on the part of Appellants as a result of both their actions, as well as their failure to act. In the case at bar, the trial court initially granted Appellees request for a preliminary injunction on June 9, 2004, finding that "Defendants wrongfully engaged in self help by blocking the railroad culvert which resulted in flooding on Plaintiff's lands. Defendants should have filed a complaint for an injunction and sought a legal remedy." Thus, the trial court found that "Defendants' intentional and unreasonable actions created nuisances on Jolley and Mccollister's lands," and accordingly ordered that Defendants remove the obstructions to the railroad culvert within seven days.
 {¶ 15} However, Appellants failed to abide by the order of the trial court and on July 26, 2004, the trial court found Appellants had "refused to take any action toward obeying [the] Order or effectuating it in any way" and accordingly found Appellants to be in contempt of Court. The trial court did, however, give Appellants two days to purge their contempt by complying with the court's order. Unfortunately, Appellants refused to purge their contempt and the culvert still remained blocked at the time of bench trial, September 2, 2005. In fact, the culvert remained blocked until the Athens County Engineer opened the drainage way by order of the court.
 {¶ 16} The trial court's judgment entry issued in connection with the September 2, 2004 bench trial granted Appellees' request for permanent injunction and found Appellants' actions in obstructing the natural flow of water created a nuisance. The entry stated that "[p]ursuant to Civil Rule 54(B), the Court expressly determines that there is no just reason for delay." The entry also stated that "[a]ll other matters before the Court, the Court will issue by separate order." Appellants did not appeal from the trial court's imposition of the injunction or finding that their actions created a nuisance. Rather, Appellants are appealing the trial court's award of damages that were determined at subsequent hearings held after the bench trial. As such, we will not disturb the trial court's finding of nuisance and grant of injunction.
 {¶ 17} For ease of analysis, we address Appellants' assignments of error out of order. Appellants argue, in their second assignment of error, that the court committed error in assessing compensatory damages against them. In support of this argument, Appellants argue that Appellees' testimony regarding the loss of use of their land was speculative and unsupported by the evidence.
 {¶ 18} In an action to recover damages for temporary injury to real property, a landowner is entitled to recover (1) reasonable restoration costs; (2) compensation for the loss of the use of the property between the time of the injury and the restoration; and (3) damages for personal annoyance and discomfort if the plaintiff is an occupant of the property.Reeser v. Weaver Bros., Inc. (1992), 78 Ohio App.3d 681,691-694, 605 N.E.2d 1271; Henderson v. Spring Run Allotment
(1994), 99 Ohio App.3d 633, 651 N.E.2d 489; See, also, 4 Restatement of the Law 2d, Torts (1979) 544, Section 929. Each of these elements of recovery represents a separate and distinct type of damage, and the absence of one does not preclude recovery for the others. See, Henderson, supra; citing Norwood v.Sheen (1933), 126 Ohio St. 482, 493-495, 186 N.E. 102.
 {¶ 19} The only element of compensatory damages that Appellees challenge in their brief is the element relating to loss of use. Appellees argue that the Appellants' testimony regarding loss of use "was not backed up by any evidence, but rather was wholly speculative and unsupported by any other evidence." Appellees assert that this argument "not only ignores the clear evidence in the case, but continues the Simms (sic) presumptuous attitude that the consequences of the Simms (sic) are simply circumstances that their neighbors will just have to suffer." Appellees further assert that the "evidence presented in this case at the June 8, 2004, hearing, the September 2, 2004, hearing, the March 25, 2005, hearing, the April 1, 2005, hearing and the April 6, 2005, hearing, demonstrate the loss of enjoyment and use and the disturbance and annoyance of the Plaintiff-Appellees."
 {¶ 20} We begin by noting that when reviewing evidence presented at trial, an appellate court must not re-weigh the evidence. Fox v. Williams (May 28, 1996), Lawrence App. No. 95CA38, 1996 WL 292046; Montgomery v. Anderson (Mar. 2, 1993), Washington App. No. 92CA12, 1993 WL 63440. In C.E. Morris v.Foley Construction Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus, the Ohio Supreme Court held: "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." See, also,Vogel v. Wells (1991), 57 Ohio St.3d 91, 566 N.E.2d 154; Rossv. Ross (1980), 64 Ohio St.2d 203, 414 N.E.2d 426. An appellate court may not disturb a damage award unless it lacks support from any competent credible evidence. Baum v. Augenstein (1983),10 Ohio App.3d 106, 460 N.E.2d 701; Day v. Clifford (Aug. 24, 1993), Pike App. No. 499, 1993 WL 326389. In Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273, the Ohio Supreme Court wrote: "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe the demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."
 {¶ 21} In the present case, Appellants assert that the trial court improperly awarded Appellees compensatory damages in the form of loss of use of their property. This case has a somewhat unique procedural history in that several hearings were held before the court determined damages. A review of the record reveals that a hearing was held on June 8, 2004, in which the trial court granted Appellees' request for a preliminary injunction, ordering Appellants' to unblock the drainage culvert. A bench trial was held on September 2, 2004, at which time the culvert remained blocked despite the court's prior order. At that time, Appellees' counsel requested that the trial court conduct additional hearings to determine Appellees' damages, arguing that the damages could not be completely determined until the water receded from Appellees' properties. Appellants objected; however, the trial court did conduct further hearings on damages, which occurred on March 25, 2005, April 1, 2005, and April 6, 2005. Although Appellants recount their objections to this procedural irregularity in their brief, they do not specifically challenge it on appeal.
 {¶ 22} Further, in light of the nature of the damages to be determined in this case, we do not feel that it was an abuse of discretion of the part of the trial court to accommodate Appellees' request that the damages be determined after the water situation was completely resolved.[3]
 {¶ 23} Appellees testified regarding their loss of use of their properties at the September 2, 2004 bench trial, as well as the subsequent damages hearings that were conducted in March and April of 2005. Specifically, the Jolleys testified that they had to pay rent in addition to the mortgage payment for the house that they could not put on the foundation (as a result of Appellants' actions). They also stated that they had to pay a water bill, which they would not have had to pay if they were able to live on their property and utilize the well. They were also prevented from using their property for family gatherings, a loss that they had a difficult time valuing. The McCollisters testified that their septic system and water well were rendered unusable during the period in which their property was flooded as a result of Appellants' actions, thereby causing them to have to use restroom facilities elsewhere and drive to town to wash clothes. They also testified that they were and still are forced to purchase drinking water. They further testified that the flood waters prevented Mr. McCollister from accessing his workshop, preventing him from building dollhouses, which he sells. The McCollisters also testified that the flooding caused another trailer that they own, which is on the property, to settle, which caused the ceiling to crack.
 {¶ 24} In their reply brief, Appellants request that this Court should review the credibility of Appellees, arguing that Appellees' testimony was inconsistent and therefore unreliable. Specifically, Appellants argue that Mr. McCollister initially testified that $22,300.00 worth of damage was done to the trailer on his property, but later testified that he could repair the damage for $1,500.00. However, a review of the transcript reveals that Mr. McCollister is very hard of hearing, which resulted in some confusion at times during the hearings. At first, Mr. McCollister testified that he obtained an estimate to have someone else perform the repairs. That estimate, according to Mr. McCollister, was "$22,300 (sic) or something. I can't remember just what it was." The estimate involved taking the ceiling off and then replacing it. However, Appellants' counsel then questioned Mr. McCollister as to what he thought the damage was, based on his own experience, to which Mr. McCollister initially replied "[p]retty close to $2,000." After further questioning, Mr. McCollister testified "Well I can probably fix it around $1,500.00. * * * Yea I probably could but that wouldn't, you know, I think I could probably fix it for that." (Emphasis added).
 {¶ 25} A review of this testimony indicates that Mr. McCollister was asked about the extent of these damages multiple ways and multiple times. We believe, and apparently so did the trial court, that Mr. McCollister's testimony was credible, based on his own experience, which was responsive to the question asked by Appellants' counsel. Therefore, we are not persuaded by Appellants' attempt to mischaracterize the nature of Mr. McCollister's testimony. The same is true for Mr. Jolley's testimony. Thus, we conclude there is competent, credible evidence to support the trial court's compensatory damages award. Accordingly, we affirm the trial court's award of compensatory damages.
 {¶ 26} In their first assignment of error, Appellants argue that the court committed error in allowing the issue of punitive damages to be tried. In this assignment of error, Appellants argue that because punitive damages were not specifically requested in Appellees' complaint, the trial court erred in allowing the issue to be tried. Appellants also argue that there was no showing of malice, which is a requirement when awarding punitive damages.
 {¶ 27} Punitive damages are awarded to punish the guilty party and deter tortious conduct. Detling v. Chockley (1982),70 Ohio St.2d 134, 136, 436 N.E.2d 208; Digital Analog DesignCorp. v. North Supply Co. (1992), 63 Ohio St.3d 657, 660,590 N.E.2d 737. R.C. 2315.21, which governs the recovery of punitive damages in tort actions, provides in pertinent part, as follows:
(C) Subject to division (E) of this section, punitive or exemplary damages are not recoverable from a defendant in question in a tort action[4] unless both of the following apply:
(1) The actions or omission of that defendant demonstrate malice or aggravated or egregious fraud, or that defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate.
(2) The trier of fact[5] has returned a verdict or has made a determination pursuant to division (B)(2) or (3) of this section of the total compensatory damages recoverable by the plaintiff from that defendant.
 {¶ 28} In order to recover punitive damages in a tort action, a plaintiff is required to prove that the acts or omissions of a tortfeasor demonstrate malice, fraud, oppression, or insult. R.C.2315.21(B); Preston v. Murty (1987), 32 Ohio St.3d 334,512 N.E.2d 1174; Motorists Mutual Ins. Co. v. Said (1992),63 Ohio St.3d 690, 696, 1992-Ohio-94, 590 N.E.2d 1228. The burden of proof necessary to recover punitive damages is clear and convincing evidence. R.C. 2315.21(C)(3). "Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage, such spite or `malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton. * * *." Motorists Mut. Ins. Co.,
supra, quoting Prosser Keeton, The Law of Torts (5 Ed. 1984) 9-10, Section 2; See, also Locafrance United States Corporationv. Interstate Distribution Services, Inc. (1983),6 Ohio St.3d 198, 451 N.E.2d 1222; Fox v. Williams, supra.
 {¶ 29} The Ohio Supreme Court has stated "[a]ctual malice, necessary for an award of Punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregardfor the rights and safety of other persons that has a greatprobability of causing substantial harm." Preston, supra; See, also, Motorists Mut. Ins. Co., supra; Calmes v. Goodyear Tire Rubber Co. (1991), 61 Ohio St.3d 470, 575 N.E.2d 416; Digital Analog Design Corp. v. North Supply Co. (1989),44 Ohio St.3d 36, 540 N.E.2d 1358, (Emphasis added). Malice can be inferred from conduct. Digital Analog Design Corp. v. North Supply Co.
(1989), 44 Ohio St.3d at 44.
 {¶ 30} Of importance, however, in the case sub judice, is Appellants' argument that Appellees' failure to claim punitive damages in their initial complaint should have precluded their ability to request and receive punitive damages. Appellees counter Appellants' argument by asserting that it is not necessary that punitive damages be specially pleaded or claimed. In Lashua v. Lakeside Title Escrow Agency, Stark App. No. 2004CA00237, 2005-Ohio-1728, the Fifth District Court of Appeals held that "[i]t is not necessary that punitive damages be specially pleaded or claimed." citing Brookridge Party Ctr.,Inc. v. Fisher Foods, Inc. (1983), 12 Ohio App.3d 130, 131,468 N.E.2d 63. However, that court also held that "the plaintiff must allege facts, in the complaint, from which the essential element of malice may be inferred." Lashua, supra, citing ColumbusFinance Inc., v. Howard (1975), 42 Ohio St.2d 178, 183,327 N.E.2d 654.
 {¶ 31} The holding in Lashua is consistent with Civ.R. 15(B), Amended and supplemental pleadings, which provides as follows:
"Amendments to conform to the evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."
 {¶ 32} In the case sub judice, Appellees' complaint contains facts, in paragraphs seven through ten, sufficient to infer malice. In those paragraphs, Appellees specifically alleged as follows:
"7. In approximately November of 2003, the Defendantsdeliberately, knowingly, willfully, and unlawfully blocked the culvert to prevent the natural water shed from draining its water through the said culvert.
8. The Defendants blocked the said culvert knowing that itwould cause water from the entire water shed to back up and floodthe Jolley and McCollister properties. The Defendants blocked the culvert against the request and demand of the Plaintiffs not to block the culvert.
9. Such blockage of water through the culvert and the resultant flooding on the Jolley and McCollister properties caused damageto both properties, is continuingly causing damage, and willcause further damage to the said properties.
10. The Defendants Simms and Simms refuse to remove suchblockage despite demand." (Emphasis added).
 {¶ 33} In light of the foregoing, we conclude that Appellees' complaint alleged sufficient facts to support an inference of malice. However, Appellants concede the holding in Lashua, but also argue that it was improper for the trial court to allow Appellees to proceed on this issue over their objection. In support of their argument, Appellants cite Lambert v. Shearer
(1992), 84 Ohio App.3d 266, 616 N.E.2d 965, which concluded that "the trial court erred in allowing plaintiff to make statements concerning punitive damages after defendant's strenuous objections. Plaintiff should have been required to amend the complaint to allege facts supporting an inference of malice as soon as it became clear that such an award could be justified. Though it is permissible to seek to litigate an issue through implied consent under Civ.R. 15(B), plaintiff cannot keep trying to inject the issue into the trial after defendant's legitimate objections. The trial court should have limited the plaintiff's efforts and not let the unpleaded issue permeate the trial as it did."
 {¶ 34} We are not persuaded by Appellants' arguments due to the factual differences between the case sub judice andLambert. In Lambert, the complaint did not mention punitive damages, but merely requested compensatory damages for "professional negligence," and, the issues were being tried before a jury. Also, in Lambert, there was no notice of intent to claim punitive damages until right before the trial. At that time, and before any proceedings were initiated, defense counsel informed the court that the plaintiff had failed to amend the complaint. The court, however, allowed plaintiff to present the unpleaded issue to the jury.
 {¶ 35} In the case sub judice, the complaint alleged facts sufficient to put Appellants on notice of the need to defend against a claim for punitive damages. Also, contrary to Appellants' assertions that the first mention of punitive damages occurred at the end of the September 2, 2004, hearing, Appellees voiced their intent to seek punitive damages, on the record, at the June 8, 2004, hearing. Appellants did not raise an objection or request that the complaint be amended at that time. Appellees intent to seek punitive damages was again discussed, on the record, both at the beginning and at the conclusion of the September 2, 2004, bench trial. At that time, Appellants' counsel argued that the testimony did not support a finding of malice; however, this argument went to the merits of the claim and was not an objection to the allowance of the claim in general. In fact, Appellants did not voice an objection to the allowance of the punitive damage claim until they filed their post trial brief concerning the issue of damages on April 14, 2005. By this time, the trial court had already conducted a preliminary hearing, a bench trial and three separate damages hearings.
 {¶ 36} We recognize that in support of the objection raised in the post trial brief, Appellants again argue on appeal that Appellees did not assert a punitive damages claim until after the initial damages hearing was held. This is simply inaccurate as Appellees clearly raised the issue as early as June 8, 2004, three months before the bench trial. Further, Appellants cannot show and do not even argue how they were prejudiced by Appellees' disclosure of their intent to seek punitive damages at the June 8, 2004, hearing. As such, we conclude that the trial court did not err in allowing the issue of punitive damages to be tried.
 {¶ 37} In the case at bar, the record contains competent, credible evidence to support the trial court's decision to award Appellees punitive damages. The trial court reasonably could have determined from the evidence presented that Appellant consciously disregarded the rights and safety of other persons, creating a great probability of causing substantial harm. Some evidence reveals that (1) Appellants intentionally, by their own admission, blocked a drainage culvert which carries water away from Appellees' properties; (2) Appellant, Danny Simms I admitted his actions flooded Appellees' properties; (3) Appellants did not seek a permit to block the culvert; (4) Appellants blocked the culvert with the intent of keeping water from draining from Appellees' properties onto their property and with the knowledge that their actions would damage Appellees' properties; (5) Despite having knowledge that their actions were causing continuing damage to Appellees' properties, Appellants refused to remove the blockage, even after the trial court ordered them to do so. Thus, we conclude Appellants' first assignment of error is without merit.
 {¶ 38} Accordingly, based upon the foregoing reasons, we overrule Appellants' first and second assignments of error and affirm the trial court's award of compensatory and punitive damages to Appellees.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellees recover of Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Abele, J. and Kline, J.: Concur in Judgment and Opinion.
[2] The trial court awarded the Jolleys compensatory damages in the amount of $14,299.39 (which amount included their attorney fees) and punitive damages in the amount of two times the amount of the compensatory damages, for a total damage award of $42,898.17. The McCollisters were awarded $14,068.86 in compensatory damages (which included their attorney fees) and a punitive damage award of two times the amount of the compensatory damages, for a total damage award of $42,206.58.
[3] In fact, doing so most likely benefited Appellants in that Appellee, Ralph Jolley, testified during the later hearings that his foundation was, contrary to his earlier beliefs, usable and he was able to put his modular home on it after the waters receded. The cost of the foundation was estimated at $18,000.00 and had it been destroyed by the water, it is possible that the trial court would have assessed this damage to Appellants as well.
[4] R.C. 2315.21(A)(1) provides, in pertinent part, "`Tort action' means a civil action for damages for injury or loss to person or property."
[5] R.C. 2315.21(A)(2) provides "`Trier of fact' means the jury or, in a nonjury action, the court."