In re Leonard SHERVIN, t/a Rose
Vending Co., f/k/a Rose Vending
Co., Inc., Debtor.

Rose SHERVIN, Charles Davis, Linda
Patterson, and Leonard Shervin,
Appellants,

v.

Arthur P. LIEBERSOHN,
Trustee, Appellee.

Bankruptcy No. 88–12803.
Civil Action No. 95–3130.

United States District Court,
E.D. Pennsylvania.

Aug. 16, 1996.

Leonard P. Goldberger, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA, for Arthur P. Liebersohn, Trustee.

Paul J. Winterhalter, Di Donato and Winterhalter, P.C., Philadelphia, PA, for Appellants.

1. In addition, the bankruptcy court assessed compensatory money damages in the amount of $250,000 against Rose and Leonard Shervin jointly and severally for unlawful civil conspiracy and in the amount of $10,000 against Linda Patterson, the daughter of Rose and Leonard Shervin, to compensate the bankruptcy estate for losses resulting from the fraudulent transfers made to Patterson. The appellants do not challenge these specific aspects of the Order.

## MEMORANDUM

LOWELL A. REED, Jr., District Judge.

The appellants challenge the order of the bankruptcy court dated April 13, 1995, which assessed money damages against Rose Shervin ("Shervin") for damages suffered by the bankruptcy estate as a result of the fraudulent transfers made by the debtor to Shervin, awarded punitive damages to the trustee Arthur P. Liebersohn ("the trustee"), and imposed a money judgment as sanctions against Shervin for contempt.[1]

### FACTUAL BACKGROUND

In July, 1994 the bankruptcy court determined that Leonard Shervin ("the debtor") transferred his property with constructive and/or intentional fraud in order to conceal the property from his creditors. The debtor had conveyed property to his wife Rose Shervin ("Shervin"), his daughter Linda Patterson ("Patterson"), and his son-in-law Charles Davis ("Davis") without fair consideration and while insolvent and/or with the intent to hinder, delay, and defraud creditors. Pursuant to sections 354 and 357 of the Pennsylvania Fraudulent Conveyance Act, United States Bankruptcy Judge Stephen Raslavich, in an order dated July 11, 1994, held that the trustee can avoid the transfers made by the debtor to the various family members. See Pa.Stat.Ann. tit. 39, §§ 354, 357. This Court reviewed the memorandum and order of the bankruptcy court dated July 11, 1994 with regard to the transfers of the debtor to his daughter Patterson and son-in-law Davis and affirmed the order of the bankruptcy court.[2] See Memorandum and Order of this Court dated October 10, 1995.

The order of the bankruptcy court dated July 11, 1994, required Shervin to provide the trustee with a full and complete account-

2. The bankruptcy court found that particular transfers made to the debtor's wife, Rose Shervin, were fraudulently conveyed and subject to avoidance. Although Rose Shervin joined Patterson and Davis in filing the appeal, Shervin subsequently decided not to proceed. Therefore, this Court did not review the findings and conclusions made by the bankruptcy court with regard to Rose Shervin.

ing of her assets and liabilities and provided for a hearing to determine her compliance with the order. At the first compliance hearing on August 25, 1994, the bankruptcy court concluded that Shervin did not comply with the order. The court presided over two subsequent compliance hearings on September 26, 1994 and October 19, 1994. Although Shervin provided additional information and records, which should have been produced to the trustee prior to the initial August hearing, Shervin did not fully explain the source of funds deposited in various checking accounts and other investments. As a result, the trustee filed a motion in aid of execution and request for expedited hearing on January 9, 1995, seeking compensatory damages for property fraudulently transferred by the debtor, damages for civil conspiracy against the debtor and Shervin, punitive damages, and contempt sanctions against Shervin. After two hearings on the motion of the trustee, the bankruptcy court granted the relief requested in a memorandum and order dated April 13, 1995. The defendants have challenged the monetary judgement in the amount of $500,000 against Shervin, the award of punitive damages in the amount of $250,000 against the debtor and Shervin, and the judgment in the amount of $50,000 against Shervin for her failure to comply with court orders.

## DISCUSSION

 A district court has jurisdiction to sit as an appellate court and hear appeals from final judgments, orders, and decrees of bankruptcy judges. 28 U.S.C. § 158(a). The district court exercises plenary review over the legal conclusions of the bankruptcy court but may not set aside findings of fact unless they are clearly erroneous. *In re Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir.1988). In addition, the district court shall give "due regard to the opportunity of [the bankruptcy] court to judge first-hand the credibility of witnesses." *Fellheimer, Eichen & Braverman v. Charter Technologies, Inc.*, 57 F.3d 1215, 1223 (3d Cir.1995).

## A. COMPENSATORY DAMAGES

 The bankruptcy court ordered Shervin to compensate the bankruptcy estate in the amount of $500,000 for the loss of assets the debtor fraudulently diverted to Shervin. Appellants challenge the order, contending that the Pennsylvania Fraudulent Conveyance Act ("the Act") does not permit monetary judgments and, hence, the order is erroneous as a matter of law.

Section 359 of the Act provides:

(1) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser:

(a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim; or

(b) Disregard the conveyance, and attach or levy execution upon the property conveyed.

Pa.Stat.Ann. tit. 39, § 359. According to appellants, the plain language of the statute authorizes two remedies only for violations of the Act: set aside the transfer or disregard the conveyance.

The bankruptcy court recognized that the two remedies afforded by the statute provide sufficient recourse where the fraudulently transferred property remains in possession of the transferee and has not depreciated in value due to any conduct of the transferee. However, where the transferee no longer possesses the fraudulently transferred property, the bankruptcy court determined that the transferee may be held personally liable. In support of its proposition, the bankruptcy court cited to *In re Penn Packing Co.*, 42 B.R. 502 (Bankr.E.D.Pa.1984), *Winter v. Welker*, 174 F.Supp. 836 (E.D.Pa.1959), and *Toff v. Vlahakis*, 380 Pa. 512, 112 A.2d 340 (1955). In all three cases, the courts permitted the creditor to seek money damages against the transferee who no longer possessed the fraudulently transferred property.

Although the issue raised in this appeal has not been addressed by an overwhelming

number of courts in Pennsylvania, I find that the bankruptcy court acted properly and did not exceed the bounds of the law. As explained by Chief Judge Goldhaber in *In re Penn Packing,* the Act provides an "efficient, optional, and additional remedy to a creditor who has not reduced his claim to judgment," but does not restrict the remedies available to creditors at common law, one of which is money damages. *In re Penn Packing,* 42 B.R. 502, 506 n. 5. The bankruptcy court previously determined that the debtor fraudulently transferred to Shervin cash and cash equivalents in the approximate amount of $500,000. Because Shervin no longer has possession of the transferred property and has failed to account for such property, the provisions of the Act do not provide a sufficient remedy. Therefore, I will affirm the order of the bankruptcy court, which ordered Shervin to pay to the trustee compensatory damages in an amount equal to the value of the fraudulently transferred property.

## B. PUNITIVE DAMAGES

██ Under Pennsylvania law, punitive damages punish outrageous conduct involving bad motive or reckless indifference to the rights of others. *Tunis Bros. Co. v. Ford Motor Co.,* 952 F.2d 715, 740 (3d Cir.1991); *In re One Meridian Plaza Fire Litig.,* 820 F.Supp. 1460, 1488 (E.D.Pa.1993). Appellants contend that the Shervins did not have the requisite state of mind to warrant an imposition of punitive damages. According to appellants, "the Shervins acted out of a motive for self preservation to save their assets for retirement, and not out of ill will or vindictiveness toward [the creditor]." *See* Brief of Appellant at 15. The bankruptcy court reviewed the trial record and considered all the circumstances, including the conduct of the Shervins and the nature and extent of the harm to the creditor. Moreover, the bankruptcy court had the opportunity to evaluate the "first-hand credibility of witnesses" during the proceedings. *See Fellheimer,* 57 F.3d at 1223. There is sufficient evidence in the record to support the findings

and conclusions of the bankruptcy court. Therefore, I will affirm the award of punitive damages against the debtor and Shervin.

## C. SANCTIONS FOR CONTEMPT

██ Bankruptcy rule 9020 requires an evidentiary hearing prior to the imposition of sanctions for contempt that occurs outside the presence of the Court. Fed.R.Bankr.P. 9020(b). During the requisite hearing, the complainant must establish a prima facie case of contempt by clear and convincing evidence, which shows that a clear and specific enforceable order unambiguously commands a party to perform or refrain from performing in accordance therewith. *In re Affairs with a Flair, Inc.,* 123 B.R. 724, 727 (E.D.Pa.1991). The burden then shifts to the contemnor to come forward with evidence to show a present inability to comply with the court's order. *Id.*

According to Shervin, the bankruptcy court failed to follow the procedure outlined in Rule 9020, which requires the court to hold an evidentiary hearing after providing written notice of (1) the date and time of the hearing, allowing reasonable time for preparation of a defense, (2) the essential facts constituting the contempt charged, and (3) the classification of the contempt as criminal or civil.[3] Fed.R.Bankr.P. 9020(b). The trustee asserts that the bankruptcy court issued notice to Shervin of the hearing on the motion for relief in aid of execution. *See* Brief of Appellee at 23 n. 5. Similarly, in its order dated January 18, 1995, upon consideration of the motion of the trustee, the bankruptcy court indicated that notice of the motion had been given to both parties. Neither party has provided this Court with a copy of the order of the bankruptcy court dated January 10, 1995, which allegedly provided the notice required by Rule 9020. However, I have reviewed the motion of the trustee for relief in aid of execution, which sets forth the basis for a request for sanctions—the failure of Shervin to provide a full and complete accounting, even after three hearings to mon-

---

3. Shervin does not elaborate beyond her general contention that the bankruptcy court did not follow proper procedure. Therefore, I will examine the procedural background in light of the

notions of due process, which require a court to provide notice of the charges and the opportunity to respond.

itor compliance with the order. *See* Motion for relief in aid of execution ¶¶ 23–25. Shervin directly responded to these allegations in her response to the motion, indicating that she had notice of the allegations and factual basis for contempt prior to the hearing. *See* Response of Shervin and Linda Patterson at ¶¶ 23–25. Counsel for Shervin participated in the hearing of February 17, 1995 on the motion and engaged in direct and cross-examination of the witnesses. Having found that Shervin responded to the motion and fully participated in the hearing on the motion, through her counsel, I conclude that there was essential compliance with Rule 9020.

■ While stating that "none of the procedures were followed," Shervin curiously contends that the trustee did not satisfy the prima facie case at either of two hearings on the motion for relief in aid of execution held on January 18, 1995 and February 17, 1995. *See* Brief of appellant at 17–18. According to appellants, the bankruptcy court based its findings of contempt on evidence presented during the course of hearings prior to the filing of the motion. This argument is without merit. Upon review of the transcript of the hearing held on February 17, 1995, I find that there is sufficient evidence in the record to support the finding of contempt of the bankruptcy court. By comparing the Prudential Securities account balances of Shervin for 1992, 1993, and 1994, the bankruptcy court drew a logical inference that excess monies were withdrawn in violation of the injunctions issued by the court. The bankruptcy court incorporated by reference all documents previously admitted into evidence in prior proceedings on February 7–8, 1994. *See* Hearing before the Honorable Stephen Raslavich on February 17, 1995 at 10. These documents revealed that Shervin did not provide information regarding the account with First United Bank, the 1500 shares of MFS multi-market income trust held by Shervin, and the treasury notes owned by Shervin between 1989 and 1991. These are but a few examples cited in the record of February 17, 1995, which detail Shervin's complete disre-

gard of the orders of the bankruptcy court. Therefore, I find that the bankruptcy court made findings of contempt based upon sufficient evidence in the record, the findings were not clearly erroneous, and such findings will be upheld.

■ Finally, Shervin questions the proper discretion of the judge to impose contempt sanctions. Having already addressed the procedures followed by the bankruptcy court and the sufficiency of the evidence to support the findings of the bankruptcy court, I assume that Shervin refers to the amount of the sanction imposed. Shervin cites to three cases, none of which involve the discretion afforded to the bankruptcy court in determining the amount of sanctions imposed.[4] The bankruptcy court justified its decision to impose sanctions in the amount of $50,000 for two principal reasons: the failure of Shervin to provide a full and complete accounting in the face of several orders and her failure to surrender particular property as ordered by the bankruptcy court. Based upon the continual and flagrant disregard of court orders cited by the bankruptcy court throughout its memorandum dated April 13, 1995, I cannot find the imposition of sanctions in the amount of $50,000 to be an abuse of discretion.

An appropriate order follows.

### *ORDER*

**AND NOW,** this 14th day of August, 1996, upon consideration of the brief of appellants Rose Shervin, Charles Davis, Linda Patterson, and Leonard Shervin (Document No. 3) and the appellee's brief, as well as the entire record, for the reasons stated in the attached memorandum, it is hereby **ORDERED** that the order of the bankruptcy court dated April 13, 1995 is **AFFIRMED.**

---

4. The cases cited by Shervin involve the dischargeability of debt owed by a former spouse who has filed for bankruptcy. *In re Morel,* 983 F.2d 104 (8th Cir.1992); *Shaver v. Shaver,* 736 F.2d 1314 (9th Cir.1984); *In re Bereziak,* 160 B.R. 533 (E.D.Pa.1993).