**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3218
_____

DEBORAH D. KLEIN

v.

DOUGLAS M. WEIDNER; KATHLEEN K. WEIDNER;
DMW MARINE, LLC; JEAN M. WEIDNER; JOHN DOE

Douglas M. Weidner, Kathleen K. Weidner,
DMW Marine, LLC,

               Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-08-cv-03798)
District Judge: Hon. Juan R. Sanchez
_____

Argued April 17, 2013

BEFORE: AMBRO, HARDIMAN and COWEN,
<u>Circuit Judges</u>

(Filed:  September 3, 2013)

William J. Gallagher, Esq.
Kristin A. Molavoque, Esq.
Jane M. Shields, Esq. (Argued)
MacElree Harvey
17 West Miner Street
P.O. Box 660
West Chester, PA 19381

       Counsel for Appellants Douglas M. Weidner,
       Kathleen K. Weidner, DMW Marine, LLC

Mary E. Kohart, Esq. (Argued)
Elliott Greenleaf & Siedlkowski
925 Harvest Drive
Suite 300, Union Meeting Corporate Center V
Blue Bell, PA 19422

       Counsel for Appellee Deborah D. Klein

_____

OPINION
_____

COWEN, <u>Circuit Judge</u>.

Defendants Douglas M. Weidner, Kathleen K. Weidner, and DMW Marine, LLC ("DMW"), appeal from the order of the United States District Court for the Eastern District of Pennsylvania granting Plaintiff Deborah D. Klein's

2

motion for summary judgment as to her claim that Mr. Weidner's transfer of a parcel of real estate to himself and Ms. Weidner as tenants by the entirety violated the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"). They also appeal from the subsequent order entering judgment pursuant to the District Court's decision on partial summary judgment, which specifically ordered the Weidners to execute a deed transferring this parcel of real estate to Mr. Weidner in fee simple. In addition, Appellants challenge the District Court's order directing that judgment of $548,797.07 in punitive damages be entered against Mr. Weidner for his PUFTA violations. We will affirm.

I.

In 1999, Ms. Klein and Mr. Weidner obtained a divorce in California. As part of this divorce decree, the Orange County Superior Court ordered Mr. Weidner to make spousal and child support payments to Ms. Klein. Appellants acknowledge that "Weidner made some child support payments but had paid no spousal support as of the date of trial in this case." (Appellants' Brief at 3 (citing Klein v. Weidner, Civil Action No. 08-3798, 2010 WL 2671450, at *1 (E.D. Pa. Jul. 2, 2010) ("Klein III")).) Mr. Weidner and Ms. Weidner, his current wife, "were aware of Klein's claim that Weidner owed her spousal and child support at the time they married" on January 1, 2006. (Id. at 4 (citing Klein III, 2010 WL 2671450, at *2).) On June 2, 2008, the Orange County Superior Court determined that Mr. Weidner owed Ms. Klein $548,797.07 in unpaid spousal and child support. A

3

judgment in this amount was entered in the Chester County Court of Common Pleas on August 25, 2008.

On March 17, 2005, Mr. Weidner purchased a parcel of real estate located in Chester Springs, Pennsylvania ("Property"), from his mother. On January 17, 2006, he transferred the Property to himself and Ms. Weidner as tenants by the entirety.

Ms. Klein alleged in the first count of her amended complaint that Mr. Weidner's transfer of the Property violated the PUFTA. On January 6, 2010, the District Court granted her motion for summary judgment as to this claim because "Weidner's transfer of the Property satisfies all three of the fraudulent transfers described by PUFTA." Klein v. Weidner, Civil Action No. 08-3798, 2010 WL 27910, at *1 (E.D. Pa. Jan. 6, 2010) ("Klein I"). According to the District Court, the transfer constituted an actual fraudulent transfer under 12 Pa. Cons. Stat. Ann. § 5104(a)(1) and a constructive fraudulent transfer under 12 Pa. Cons. Stat. Ann. §§ 5104(a)(2) and 5105. On January 13, 2010, the District Court entered an order for entry of judgment pursuant to the District Court's partial summary judgment decision, and the Weidners were ordered to execute a deed transferring the Property back to Mr. Weidner in fee simple by 10 a.m., January 15, 2010.

Ms. Klein also attacked Mr. Weidner's transfer of an ownership interest in DMW and attempted to pierce DMW's corporate veil. The District Court denied Ms. Klein's motion for summary judgment as to these counts in Klein I. Following a bench trial, it entered its findings of fact and

conclusions of law on February 18, 2010. According to the District Court, the transfer of the ownership interest in DMW to the Weidners as joint owners—just like the transfer of the Property to the couple as tenants by the entirety—constituted both an actual and a constructive fraudulent transfer under Sections 5104(a)(1), 5104(a)(2), and 5105 of the PUFTA. The District Court also determined that "Weidner has improperly used the LLC form to perpetrate an injustice and therefore Klein may reverse-pierce the corporate veil and treat DMW's assets as Weidner's assets for the purpose of collecting her judgment against Weidner." Klein v. Weidner, Civil Action No. 08-3798, 2010 WL 571800, at *10 (E.D. Pa. Feb. 17, 2010) ("Klein II"). Judgment was entered against Mr. Weidner, Ms. Weidner, and DMW on the second and third counts, and the parties were directed to brief the issue of whether punitive damages should be awarded and, if so, in what amount.

In a memorandum entered on July 6, 2010, the District Court concluded that "[p]unitive damages may be awarded for violations of PUFTA." Klein III, 2010 WL 2671450, at *10. Determining that Mr. Weidner—but not Ms. Weidner—engaged in conduct in connection with his fraudulent transfers that was so outrageous as to warrant an award of punitive damages, the District Court ordered that "judgment

5

of $548,797.07 in punitive damages is entered" against Mr. Weidner.[1] Id.

## II.

The District Court had jurisdiction over this diversity matter pursuant to 28 U.S.C. § 1332.[2]

It is undisputed that the substantive law of Pennsylvania applies here. After all, Ms. Klein alleged violations of the PUFTA, i.e., Pennsylvania's specific version of the Uniform Fraudulent Transfer Act ("UFTA"). In the

---

[1] On April 19, 2011, Mr. Weidner notified the Clerk that, on December 23, 2010, he filed a voluntary petition for bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Eastern District of Pennsylvania. On May 3, 2011, the Clerk stayed the current appeal pursuant to 11 U.S.C. § 362 and directed Mr. Weidner to file status reports every 90 days until either the automatic stay is lifted or the bankruptcy is discharged. In his October 10, 2012 status report, Mr. Weidner indicated that the Bankruptcy Court denied discharge on September 10, 2012 in an adversary proceeding (which was commenced by Ms. Klein). An appeal was filed from this Bankruptcy Court ruling to the District Court. Appellants also requested that the current Third Circuit appeal be removed from suspense. In an October 18, 2012 order, the Clerk construed the status report as a motion to lift the stay and granted the motion.

[2] Ms. Klein is a citizen of California, while the Weidners and DMW are Pennsylvania citizens.

absence of a Pennsylvania Supreme Court ruling on the precise question of law presented, we must predict how it would resolve the question. See, e.g., Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1373 n.15 (3d Cir. 1996). In addressing the statutory predecessor to the PUFTA (i.e., Pennsylvania's version of the Uniform Fraudulent Conveyance Act ("UCFA"), the Pennsylvania Uniform Fraudulent Conveyance Act ("PUFCA")), we explained that, "[w]here Pennsylvania law is silent, we may look to the law in other jurisdictions that have adopted the UFCA, and decisions construing analogous provisions of the Bankruptcy Code." Moody v. Security Pac. Bus. Credit, Inc., 971 F.2d 1056, 1063 (3d Cir. 1992) (citations omitted).

We exercise plenary review over a district court's grant of summary judgment, applying the same standard that the district court should have applied. See, e.g., Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000). As the District Court noted, "[s]ummary judgment may be granted only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Klein I, 2010 WL 27910, at *1 (quoting Fed. R. Civ. P. 56(c) (2009)).

III.

A.     The Property Transfer Claim

7

Appellants argue that the District Court committed reversible error by granting summary judgment on Ms. Klein's claim that the transfer of the Property violated the PUFTA. We nevertheless agree with the District Court that this action constituted an actual fraudulent transfer as well as a constructive fraudulent transfer.

The District Court began with the actual fraudulent transfer category. Section 5104(a)(1) states that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay or defraud any creditor of the debtor." Section 5104(b) then lists a number of factors—the "badges of fraud"—that may be considered in determining "whether the debtor had an actual intent to hinder, delay or defraud one or more creditors." 12 Pa. Cons. Stat. Ann. § 5104 cmt. 5. These Section 5104(b) factors include:

> (1) the transfer or obligation was to an insider;
>
> (2) the debtor retained possession or control of the property transferred after the transfer;
>
> (3) the transfer or obligation was disclosed or concealed;
>
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

8

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

"Proof of the existence of any one or more of the factors enumerated in subsection (b) may be relevant evidence as to the debtor's actual intent but does not create a presumption that the debtor has made a fraudulent transfer or incurred a fraudulent obligation." 12 Pa. Cons. Stat. Ann. § 5104 cmt. 5. The court should take into account all of the relevant

9

circumstances in applying these statutory factors. <u>See, e.g.</u>, 12 Pa. Cons. Stat. Ann. § 5104 cmt. 6.

Although Appellants argue at some length that there were genuine issues of material fact as to several Section 5104(b) factors, we conclude that the District Court did not commit any reversible error given the undisputed evidence in the record.

Initially, it is undisputed that "the transfer . . . was to an insider" under Section 5104(b)(1)—namely, Mr. Weidner's own spouse—and that Mr. Weidner "retained possession or control of the property transferred after the transfer" pursuant to Section 5104(b)(2). With respect to Section 5104(b)(4), both Mr. Weidner as well as Ms. Weidner knew at the time of their marriage that Ms. Klein claimed that Mr. Weidner owed both spousal and child support. Appellants also acknowledge that "there had been an ongoing dispute since 2002 regarding the amount of support arrearages Weidner owed Klein" (Appellants' Brief at 19 (citing <u>Klein I</u>, 2010 WL 27910, at *1)) and that "Weidner made some child support payments but had paid no spousal support as of the date of trial in this case" (<u>id.</u> at 3 (citing <u>Klein III</u>, 2010 WL 2671450, at *1)). With respect to whether "the transfer was of substantially all the debtor's assets" under Section 5104(b)(5), Appellants contend that the Property did not constitute an asset because it was subject to a mortgage at the time of its transfer and the statutory definition of "Asset" excludes "property to the extent it is encumbered by a valid lien," 12 Pa. Cons. Stat. Ann. § 5101(b). Even with the mortgage (which Mr. Klein granted to his mother as

part of his purchase of the Property from her), it appears undisputed that there was still $525,000 of equity in the Property itself. While Appellants contend that, among other things, Ms. Weidner paid over $300,000 for improvements to the Property, "'reasonably equivalent value' is measured from Klein's perspective, not the Weidners'.'" Klein I, 2010 WL 27910, at *2 (citing In re Walter, 261 B.R. 139, 143 (Bankr. Ct. W.D. Pa. 2001); In re Erie Marine Enters., Inc., 213 B.R. 799, 803 (Bankr. Ct. W.D. Pa. 1997)). The transfer to the Weidners as tenants by the entirety removed the Property from Ms. Klein's reach, and Ms. Weidner's payments (and any promises she made to pay for renovations) therefore could not constitute reasonably equivalent value under Section 5104(b)(8). See, e.g., United States v. Parcel of Real Property Known as 1500 Lincoln Ave., 949 F.2d 73, 77-78 (3d Cir. 1991) (noting that tenant by entirety is protected against levy upon property by co-tenant's creditor). Mr. Weidner also indicated in his own deposition testimony that he held no assets in only his name after he transferred the Property and the DMW interest to himself and Ms. Weidner. Mr. Weidner accordingly "was insolvent or became insolvent shortly after the transfer was made" pursuant to Section 5104(b)(9).

Ultimately, the first, second, fourth, fifth, eighth, and ninth statutory factors indicated that the transfer at issue here was actually fraudulent. In addition to the statutory "badges of fraud," the District Court also looked to Mr. Weidner's own "words and conduct" as evidence of his intent. Klein I, 2010 WL 27910, at *3. For example, Mr. Weidner stated in a 2001 e-mail to Ms. Klein that "he would 'never ever give her

11

a red cent again' and Klein would 'never ever see a penny from [him] again.'" Id. at *3 (citing 11/27/01 E-mail). Mr. Weidner's California attorney likewise notified his counterpart that "'I have been informed by Mr. Weidner that his assets that do exist have been protected in such a way that while the children will be provided for, it will be impossible for [Klein] to recover any of the court ordered arrearages.'" Id. (citing 2/1/05 Letter). Given these undisputed circumstances, the District Court properly concluded that Mr. Weidner transferred the Property with an actual intent to hinder, delay, or defraud.

Under Section 5104(a)(2), a transfer (or obligation) is constructively fraudulent as to present and future creditors if the debtor made the transfer (or incurred the obligation):

> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> > (i) was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> >
> > (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

12

Section 5105 states the following:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

In applying these constructive fraudulent transfer provisions, the District Court relied on the same basic line of reasoning it applied in concluding that the transfer was actually fraudulent pursuant to Section 5104(a)(1). Given our discussion of the actual fraudulent transfer category, we agree that Mr. Weidner transferred the Property without receiving a reasonably equivalent value in exchange, his transfer of the Property and the DMW interest rendered him insolvent, he either believed or should have believed that he would incur debts beyond his ability to pay, and Ms. Klein herself was a present creditor at the time of the transfer.

Appellants take issue with the District Court's failure to consider Ms. Weidner as an alleged good faith transferee under 12 Pa. Cons. Stat. Ann. § 5108(a). This subsection states that "[a] transfer or obligation is not fraudulent under section 5104(a)(1) (relating to transfers fraudulent as to present and future creditors) against a person who took in

13

good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." We have already explained that Ms. Weidner did not provide reasonably equivalent value, and we accordingly reject Appellants' invocation of this defense.[3]

B.    Availability of Punitive Damages under the PUFTA

It appears undisputed that neither this Court—nor any Pennsylvania appellate court—has addressed the specific question of whether or not punitive damages are available under the PUFTA or the PUFCA. We predict that the Pennsylvania Supreme Court would answer this question in the affirmative.

Following the example set by Appellants themselves, we turn to the general rules of statutory construction set forth in Pennsylvania's Statutory Construction Act of 1972. "The

---

[3] Appellants also claim that Ms. Klein's appellate brief violates Federal Rule of Appellate Procedure 28 as well as Third Circuit Local Appellate Rules 28.1, 28.2, and 28.3 by failing to include citations to the appendix or the record and by engaging in unsubstantiated personal attacks. In the end, we do not believe that her brief violates any procedural rule. However, we take this opportunity to reiterate the vital importance of including appropriate and complete citations to the appendix or record in briefing submitted to this Court as well as our expectation that attorneys admitted to the Third Circuit bar will exhibit professionalism and courtesy at all times.

14

object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa. Cons. Stat. Ann. § 1921(a). Accordingly, "[e]very statute shall be construed, if possible, to give effect to all its provisions." Id. Conversely, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. Cons. Stat. Ann. § 1921(b). "When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering," inter alia, the occasion and necessity for the statute, the circumstances under which it was enacted, the mischief to be remedied, the object to be attained, the former law, and the consequences of a particular interpretation. 1 Pa. Cons. Stat. Ann. § 1921(c)(1)-(6). In short, the court should consider the nature and purpose of the statute. Appellants specifically emphasize 1 Pa. Cons. Stat. Ann. § 1504, entitled "Statutory remedy preferred over common law." This general rule of statutory construction states that:

> In all cases where a remedy is provided or a duty is enjoined or anything is directed to be done by any statute, the directions of the statute shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the common law, in such cases, further than shall be necessary for carrying such statute in effect.

The Pennsylvania Statutory Construction Act further provides that "[s]tatutes uniform with those of other states shall be interpreted and construed to effect their general purpose to

15

make uniform the laws of those states which enact them." 1 Pa. Cons. Stat. Ann. § 1927.

12 Pa. Cons. Stat. Ann. § 5107 governs the "Remedies of creditors" under the PUFTA:

> (a) Available remedies.—In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in sections 5108 (relating to defenses, liability and protection of transferee) and 5109 (relating to extinguishment of cause of action), may obtain:
>
> > (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.
> >
> > (2) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by applicable law.
> >
> > (3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:
> >
> > > (i) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

16

(ii) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(iii) any other relief the circumstances may require.

(b) Execution.—If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, subject to the limitations of sections 5108 and 5109, may levy execution on the asset transferred or its proceeds.

In turn, 12 Pa. Cons. Stat. Ann. § 5108 ("Defenses, liability and protection of transferee") includes the following subsection:

(b) Judgment for certain voidable transfers.— Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under section 5107(a)(1) (relating to remedies of creditors), the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c), or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against:

17

(1) the first transferee of the asset or the person for whose benefit the transfer was made; or

(2) any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee.

"If the judgment under subsection (b) is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require." 12 Pa. Cons. Stat. Ann. § 5108(c). The PUFTA also includes a "Supplementary provisions" section. Pursuant to 12 Pa. Cons. Stat. Ann. § 5110, "[u]nless displaced by the provisions of this chapter, the principles of law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency or other validating or invalidating cause, supplement its provisions."

In addition to the Pennsylvania Statutory Construction Act, Appellants turn for support to the statutory language, nature, and purposes of the PUFTA as well as case law addressing the PUFTA, the PUFCA, and other allegedly similar Pennsylvania statutory schemes. They additionally "look to the law in other jurisdictions that have adopted the UFCA [and the UFTA]." Moody, 971 F.2d at 1063 (citation omitted). With respect to Pennsylvania case law, Appellants place particular emphasis on the Pennsylvania Supreme Court's 1930 decision in Schline v. Kline, 152 A. 845 (Pa.

18

1930), which discussed the PUFCA, and its more recent ruling in Hoy v. Angelone, 720 A.2d 745 (Pa. 1998), which held that punitive damages are not available under the Pennsylvania Human Relations Act ("PHRA"). According to Appellants, the Pennsylvania Supreme Court, in cases like Hoy, has decided that punitive damages are unavailable in statutory actions unless the statute expressly provides for such damages. With respect to the PUFTA itself, Appellants emphasize the remedial nature and purposes of this fraudulent transfer statute. They believe that "the remedies are all focused upon preservation of assets and making the creditor whole—and no more." (Appellants' Brief at 8.) The PUFTA accordingly does not expressly state that punitive damages may be awarded. Appellants, in turn, claim that Section 5107(a)(1) provides that transfers and obligations may be avoided only to the extent necessary to satisfy the creditor's claim and that Section 5108(b) limits the monetary damages that a creditor may recover. According to Appellants, "punitive damages were not *required* to afford Klein the remedies of PUFTA," "[t]he common law principles of punitive damages *conflict with* and *far exceed* the remedies available under PUFTA because such remedies are designed to compensate plaintiffs to the extent of the value of the transferred property, while at the same time, protecting (not punishing) transferees," and "an award of punitive damages under PUFTA is inappropriate because it *exceeds* that which is necessary to obtain the protections of the statute." (Id. at 15-16 (citations omitted).)

Having considered the various contentions raised by the parties as well as the District Court's own reasoning, we

19

predict that the Pennsylvania Supreme Court would conclude that punitive damages are available under the PUFTA. We make this prediction based on the actual language of the statute itself—especially the "catch-all" provision in Section 5107(a)(3)(iii). We also rely on the nature and purposes of this uniform statutory scheme as well as prior case law from Pennsylvania and other jurisdictions.

As an initial matter, we do not believe that <u>Schline</u> has much, if any, bearing on the present inquiry. Appellants turn to a single sentence from this opinion: "As this act does not specify a particular course of procedure, that previously existing and any necessary modification thereof may be adopted, in order to enable the one attacking the 'conveyance' to obtain the rights accorded by the statute." <u>Schline</u>, 152 A. at 846. The state supreme court actually disposed of the appeal in that case on different grounds, before briefly calling attention to the PUFCA because "the case goes back for a trial." <u>Id.</u> More importantly, it did not actually identify the "rights accorded by the statute" and therefore did not consider whether such "rights" could include punitive damages. If anything, the <u>Schline</u> court seemed to be more concerned with the proper procedure to use (i.e., "that previously existing and any necessary modification thereof") than the actual forms of relief available under the PUFCA itself.

In <u>Hoy</u>, the state supreme court did consider the availability of punitive damages under Pennsylvania's anti-discrimination statute. In a rather lengthy opinion, the <u>Hoy</u> court specifically addressed the following statutory provision:

20

> "If the court finds that the respondent has engaged in or is engaging in an unlawful discriminatory practice charged in the complaint, the court shall enjoin the respondent from engaging in such unlawful discriminatory practice and order affirmative action which may include, but is not limited to, reinstatement or hiring of employes, granting of back pay, or any other legal or equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than three years prior to the filing of a complaint charging violations of this act."

Hoy, 720 A.2d at 748 (quoting 43 Pa. Stat. Ann. § 962(c)(3)). The Pennsylvania Supreme Court held that, "[i]n the absence of express statutory language or any further legislative guidance," punitive damages are not available under the PHRA. Id. at 751.

The court began by noting that the Pennsylvania General Assembly was free to provide for punitive damages under the PHRA and that a cursory survey of other statutory enactments revealed that it knew how to do so in clear and unambiguous terms. Id. at 748 & n.3. "Thus, as a starting point, it is reasonable to infer that the General Assembly's use of specific language to permit the award of punitive damages in numerous statutes reflects an intention to allow such a remedy only when expressly provided for." Id. at 748. Asking the court to read this remedy into the statute, the plaintiff focused on the "any other legal or equitable relief"

21

language as well as the statute's liberal construction requirement. Id. Pursuant to the canon of *ejusdem generis* ("'[g]eneral words shall be construed to take their meanings and be restricted by preceding particular words,'" id. (quoting 1 Pa. Cons. Stat. § 1903(b)), the state supreme court turned to the introductory phrase "affirmative action" as well as the specific examples provided thereafter. Id. at 748-49. "Indeed, to focus solely on the phrase 'any other legal and equitable relief' and contend that any and all remedies are available under the Act would be to relegate the introductory phrase 'affirmative action' to mere surplusage, an approach which we are not at liberty to take." Id. at 749 n.4 (citing 1 Pa. Cons. Stat. Ann. § 1922(2)). "Thus, the seemingly limitless phrase 'any other legal or equitable relief' must be construed in this light." Id. at 749. The Hoy court concluded that "the phrase 'any other legal or equitable relief' is clearly a subset of the 'affirmative action' which a court may order," and it therefore considered "whether punitive damages are properly awarded as affirmative action for purposes of the Act." Id. According to the state supreme court, the PHRA constitutes a remedial statute whose purpose is to protect the rights of individuals to obtain and hold a job without discrimination and to foster the employment of all individuals in accordance with their abilities, regardless of their sex or similar characteristics. Id. The statutory provision thereby offers various examples of "make-whole measures" (e.g., reinstatement, hiring, and back pay). Id. Accordingly, "affirmative action contemplates make whole measures and remedial action." Id. On the other hand, punitive damages, which are based on the defendant's culpability and are purely penal in nature, "are not consistent with this goal of achieving

22

the remedial purposes of the statute and are not a make-whole remedy." Id. "While punitive damages also serve to deter, simply put, we do not consider punitive damages to be consistent with the remedial nature of the Act." Id. Instead, the Pennsylvania Supreme Court believed that, "when interpreted in the context of contemplated affirmative action, the phrase 'any other legal or equitable relief' does not include punitive damages." Id.

The Hoy court reached the following conclusion: "In sum, we are of the view that the Legislature's silence on the issue of punitive damages, together with the statutory language, interpreted consistent with the laws of statutory construction and in the context of the nature and purpose of the Act, requires the conclusion that the Legislature did not intend to permit the award of exemplary damages." Id. Although not necessary to its disposition, it also addressed the other arguments advanced by the parties, including the plaintiff's theory that "public policy requires the remedy of exemplary damages." Id. at 751. The court did not dispute the premise that punitive damages would deter discrimination. Id. Nevertheless, it believed that such a premise is insufficient to support an inference that the General Assembly intended an award of punitive damages given the extraordinary nature of such relief. Id. According to the Pennsylvania Supreme Court, "punitive damages are not absolutely necessary to achieve the Act's goals of eliminating discrimination and redressing injury" because the courts already possess broad authority under the statutory scheme to fashion remedies that discourage discrimination and restore the injured party (i.e., the PHRA expressly

23

permits injunctive relief, reinstatement, hiring, and an award of back pay).  Id.  "While it can be persuasively argued that punitive damages are entirely appropriate, and even necessary, we do not sit as a super legislature."  Id.

Especially in light of our task of predicting how the Pennsylvania Supreme Court would resolve this question of state law, its prior decision in Hoy does at least provide a useful framework for considering the language, nature, and purpose of the PUFTA.  We nevertheless believe that this uniform fraudulent transfer statute differs in a number of important—and ultimately dispositive—ways from the anti-discrimination statute addressed by the state supreme court in Hoy.

As the District Court admitted, "[p]unitive damages are not explicitly authorized by PUFTA."  Klein III, 2010 WL 2671450, at *4.  In other words, the PUFTA—like the PHRA—does not include a specific provision stating, for example, that a creditor "may obtain . . . punitive damages."  However, its "Remedies of creditors" section does contain a critical "catch-all" provision—Section 5107(a)(3)(iii) expressly provides that a creditor may obtain "any other relief the circumstances may require."  Based simply on the language of this catch-all provision, a court evidently could award punitive damages as a form of "any other relief" that a creditor "may obtain" where "the circumstances may require."

According to Appellants, both statutes appear to contain a catch-all phrase that may provide for unlimited

24

remedies. However, the so-called catch-all provision at issue in <u>Hoy</u>, i.e., "any other legal or equitable relief as the court deems appropriate," actually constitutes a "subset" of another statutory term or category, i.e., "affirmative action." The PHRA itself is clear on this point, stating that "the court shall . . . order *affirmative action* which *may include*, but is not limited to, reinstatement or hiring of employes, granting of back pay, *or any other legal or equitable relief as the court deems appropriate*." 43 Pa. Stat. Ann. § 962(c)(3) (emphasis added).

In contrast, the basic language and structure of Section 5107(a)(3)(iii), Section 5107 in general, and the PUFTA as a whole differ in several significant ways from the language and structure of the PHRA's own remedial scheme. Initially, the critical catch-all provision at issue here—"any other relief the circumstances may require"—is not a "subset" of an express statutory category, at least not in the same way in which "any other legal or equitable relief as the court deems appropriate" constitutes a subset of "affirmative action." Instead of simply authorizing the trial court to order "legal or equitable relief" as a form of "affirmative action," the PUFTA provides the court with broad authority to fashion the remedy—or package of remedies—based on the specific circumstances of each individual case. We further note that this catch-all provision is not even phrased in terms of "legal" (e.g., compensatory damages) or "equitable" (e.g., an injunction) forms relief. We acknowledge that, under Section 5107(a)(3), a creditor may obtain "any other relief the circumstances may require" subject to the "applicable principles of equity" and in accordance with the "applicable

25

rules of civil procedure." Section 5107 likewise provides for various forms of equitable relief, including an injunction against further disposition of the asset under Section 5107(a)(3)(i) and the appointment of a receiver to take charge of the asset pursuant to Section 5107(a)(3)(ii). However, the statutory requirement that any relief be subject to, and in accordance with, "applicable" principles of equity and rules of civil procedure could simply mean that any relief granted must comply with the rules and procedures implicated by the specific kind of relief at issue. For example, a creditor seeking an injunction would be required to meet the otherwise generally applicable requirements for this form of equitable relief (e.g., not have "unclean hands"), and a creditor seeking punitive damages likewise must satisfy the prerequisites for such an award (e.g., demonstrate that the defendant engaged in outrageous conduct). At the very least, this "applicable principles" language cannot really be compared to the "affirmative action" language at issue in Hoy, and it thereby does not reduce the PUFTA's otherwise expansive and open-ended catch-all provision into nothing more than a mere subset of a larger term or category. Although the Pennsylvania Supreme Court does not appear to have addressed the issue, we believe that it would hold that punitive damages are generally available in equitable actions. See, e.g., Nebesho v. Brown, 846 A.2d 721, 728 (Pa. Super. Ct. 2004) (indicating that attorney's fees "in the nature of punitive damages" would be proper in equitable action to nullify deed). Appellants, for their part, do not contest the general availability of punitive damages in equitable actions under Pennsylvania law. Furthermore, the PUFTA expressly allows for an award of compensatory damages, at least under

26

certain circumstances (i.e., pursuant to Section 5108(b), "the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c), or the amount necessary to satisfy the creditor's claim, whichever is less").[4]

In contrast with the statutory scheme at issue in <u>Hoy</u>, the PUFTA also includes an express "Supplementary provisions" section. Specifically, Section 5110 states in relevant part that, "[u]nless displaced by the provisions of this chapter, the principles of law and equity, including . . . the law relating to . . . fraud, [and] misrepresentation, . . . supplement its provisions." The commentary to Section 5107 likewise indicates that this section's remedies "are cumulative" in nature, 12 Pa. Cons. Stat. Ann. § 5107 cmt. 6 (citations omitted), and "are not exclusive," 12 Pa. Cons. Stat. Ann. § 5107 cmt. 1. We have already noted that punitive damages are likely available in equitable actions under Pennsylvania law. It is also uncontested that, at least in the context of common law fraud, defendants may be ordered to pay punitive damages. In fact, "[i]t is difficult to picture a fact pattern which would support a finding of intentional fraud without providing proof of 'outrageous conduct' to support an award of punitive damages." <u>Delahanty v. First Pa. Bank</u>, 464 A.2d 1243, 1263 (Pa. Super. Ct. 1983). As Ms. Klein and the District Court also point out, punitive damages have been awarded in the domestic relations context. <u>See,</u>

_____

[4] We also note that, while Sections 5107 and 5108 clearly limit the monetary damages that a creditor may recover from a transferee, they less clearly limit the damages recoverable from the debtor.

27

e.g., Hess v. Hess, 580 A.2d 357, 358-59 (Pa. Super. Ct. 1990) (upholding jury's punitive damages award in favor of ex-wife on tort claim of fraud arising out of ex-husband's fraudulent execution of property settlement agreement). Accordingly, it appears that, based on the language of Section 5110, these well-established "principles of law and equity" governing the availability of punitive damages under Pennsylvania law "supplement" the PUFTA (or, in the words of the District Court, are "implicitly incorporated" into this statutory scheme, Klein III, 2010 WL 2671450, at *4 (citing § 5110)).

More broadly, we also believe that the underlying nature and purposes of the two statutory schemes substantially differ. The Hoy court specifically addressed an anti-discrimination statute meant to improve, in the words of its title, "human relations" and remedy past harms. Hoy, 720 A.2d at 749. In short, the PHRA was designed to foster and protect the employment of all individuals without regard to race, sex, or other invidious considerations and, in order to achieve such remedial goals, attempts to make the victims of discrimination whole. Id. After all, the notion of "affirmative action" appears to contemplate a range of make-whole remedies, and the PHRA itself provides some examples of such remedies, such as reinstatement. Id. ("Likewise, the examples of appropriate remedies offered by the statute are make-whole measures, i.e., reinstatement, hiring, and back pay. We believe that in the context of this statute, 'affirmative action' is that action which serves to achieve the remedial goals of the Act."). The PUFTA does place particular emphasis on the "preservation of assets and making

28

the creditor whole" (Appellants' Brief at 8), but it also includes an expansive and open-ended catch-all provision as well as a "Supplemental provisions" section. Unlike anti-discrimination legislation (which created a much-needed statutory remedy for the victims of discrimination and does not have a clear common law analogue), this uniform fraudulent transfer statute arises out of a long history of fraudulent conveyance law dating back to Queen Elizabeth I. As we have already noted, punitive damages are often awarded in cases of common law fraud, and, in turn, this kind of relief is likely available in the equity (and domestic relations) context under Pennsylvania law.

The facts of this case provide further support for this approach and, more broadly, for why punitive damages exist in the first place. The District Court ordered Mr. Weidner to pay punitive damages in the amount of $548,797.07 on account of his outrageous conduct in connection with two fraudulent transfers. This behavior included his intent to evade support obligations to his former wife and children even after those obligations were reduced to a judgment, and his various attempts to insulate and structure his assets and finances in order to evade his obligations and avoid paying any debt to Ms. Klein. He even forged Ms. Weidner's signature on a January 2010 mortgage of the Property intended to reduce even further the value of this asset. Mr. Weidner also repeatedly harassed Ms. Klein herself (e.g., he filed a frivolous lawsuit against Ms. Klein alleging that she had stolen a horse and sent several e-mails to their children denigrating her attempts to collect the debt and threatening to withdraw his financial support) and made deeply disturbing

29

threats against her attorneys in this case (e.g., he sent a fax to one of her attorneys stating, inter alia, that "'I will spend the time to find everything I can about you,'" including where the attorney lived, the car he drove, and "'what kind of coffee you drink,'" Klein III, 2010 WL 2671450, at *4 n.8)). Simply put, "the facts of this case are extreme in that the defendant willfully defied a court order and used unlawful and threatening means to impede the judicial process." Id. at *10. Emphasizing the open-ended nature of the penalty set forth in the PUFTA, the District Court added that "[n]ot every PUFTA case will contain such conduct beyond a single fraudulent transfer." Id. Mr. Weidner has presented the District Court—and us—with an example of the very kind of outrageous and intolerable behavior that punitive damages are designed to punish and deter. See, e.g., Hoy, 720 A.2d at 749, 751 (recognizing that punitive damages promote deterrence and that such damages may deter future discrimination); Delahanty, 464 A.2d at 1263 (highlighting difficulty of picturing fact pattern that would support finding of intentional fraud but not finding of outrageous conduct). Simply put, where "a plaintiff can show outrageous conduct coupled with a fraudulent transfer," Klein III, 2010 WL 2671450, at *5, a court may award punitive damages as a form of "any other relief the circumstances may require."

In turn, we do not believe that Pennsylvania's general preference for statutory remedies has any real effect in the present context. Although the Hoy court did not expressly mention Section 1504 of the Pennsylvania Statutory Construction Act, Appellants do cite to case law relying on this specific rule of statutory construction to conclude that

30

punitive damages are not available under either the Pennsylvania Whistleblower Law, Rankin v. City of Philadelphia, 963 F. Supp. 463, 477-80 (E.D. Pa. 1997), or a section of the Pennsylvania Welfare Code requiring attorneys to notify the Pennsylvania Department of Public Welfare of tort damages recovered in medical malpractice suits, Dep't of Pub. Welf. v. Portnoy, 566 A.2d 336, 339-41 (Pa. Commw. Ct. 1989), aff'd, 612 A.2d 1349 (Pa. 1992) (per curiam). However, the District Court properly distinguished both cases because the whistleblower statute and the welfare code set forth detailed and specific remedial schemes and, in turn, do not include either a catch-all provision like Section 5107(a)(3)(iii) or a "Supplementary provisions" section resembling Section 5110.[5] See Rankin, 963 F. Supp. at 477-80; Portnoy, 566 A.2d at 339-41.

---

[5] At oral argument, Appellants cited to two other Pennsylvania Supreme Court decisions for support. In Wertz v. Chapman Township, 741 A.2d 1272 (Pa. 1999), the court, conducting an analysis similar to the one it undertook in Hoy, concluded that a plaintiff is not entitled to a jury trial under the PHRA, id. at 1274-75. Relying on Wertz, the state supreme court then determined in Mishoe v. Erie Insurance Co., 824 A.2d 1153 (Pa. 2003), that there is no right to a jury trial in a bad faith action against an insurer under a section of the Pennsylvania Judicial Code, id. at 1155-59. Neither case has any real relevance to our current inquiry. We have already addressed Hoy and Pennsylvania's anti-discrimination statute, and the Mishoe court actually rejected the contention that the provision "affords the right to a jury trial because it permits an award of punitive damages, which

31

Prior fraudulent transfer case law, applying both Pennsylvania and (especially) non-Pennsylvania law, also weigh in favor of our position regarding the availability of punitive damages.  The District Court, after its discussion of Section 1504, Rankin, and Portnoy, went on to observe that "courts sitting within this district have concluded punitive damages are available under PUFTA and the statute which preceded it."  Klein III, 2010 WL 2671450, at *5 (citing State Farm Mut. Auto. Ins. Co. v. Tz'Doko V'Chesed of Klausenberg, 543 F. Supp. 2d 424, 431-32 (E.D. Pa. 2008); UGI Corp. v. Piccione, No. 88-1125, 1997 WL 698011, at *8-*9 (E.D. Pa. Nov. 5, 1997); Shervin v. Liebersohn, 200 B.R. 109, 112 (E.D. Pa. 1996)).  While these opinions were conclusory at best, Appellants themselves do not cite to any case specifically holding that punitive damages are unavailable under either the PUFTA or the PUFCA.  In any event, we follow Appellants' own example and look to the law in other jurisdictions that have also adopted these respective uniform schemes.  See Moody, 971 F.2d at 1063.

In DFS Secured Healthcare Receivables Trust v. Caregivers Great Lakes, Inc., 384 F.3d 338 (7th Cir. 2004), the Seventh Circuit certified three questions regarding the Indiana Uniform Fraudulent Transfer Act ("IUFTA") to the Indiana Supreme Court, including "the question whether punitive damages are available under the IUFTA," id. at 355.  It certified this specific question because of the absence of Indiana case law as well as the existence of disagreement in other states on this particular point:

---

is traditionally within the domain of the jury," id. at 1158.

> No Indiana court, however, has addressed the question whether punitive damages can be awarded under the IUFTA, and other states are split on the question. Compare Macris & Assocs., Inc. v. Neways, Inc., 60 P.3d 1176, 1181 (Utah Ct.App. 2002) (allowing punitive damages under Utah's UFTA); Volk Constr. Co. v. Wilmescherr Drusch Roofing Co., 58 S.W.3d 897, 900 (Mo.Ct.App. 2001) (same under Missouri's UFTA); Henderson v. Henderson, No. CV-00-53, 2001 WL 1719192, at *2 (Me.Super. 2001) (same under Maine's Uniform Fraudulent Conveyance Act); Locafrance United States Corp. v. Interstate Distribution Servs., Inc., [451 N.E.2d 1222, 1225 (Ohio 1983)] (same under Ohio's Uniform Fraudulent Conveyance Act), with [Morris v. Askeland Enters., Inc., 17 P.3d 830, 833 (Col.Ct.App. 2000)] (finding punitive damages are not available under Colorado's UFTA), and Northern Tankers Ltd. v. Backstrom, 968 F. Supp. 66, 67 (D.Conn.1997) (same under Connecticut's UFTA).

Id. at 354-55. Appellants exhibit admirable candor by acknowledging that "Ohio and Missouri have held that punitive damages may be available for violations of their respective UFTAs," while adding that these decisions were based on "pre-existing bodies of law and unique interpretations of their UFTAs." (Appellants' Brief at 12 n.3 (citing Volk, 58 S.W.3d at 900; Aristocrat Lakewood Nursing

33

Home v. Mayne, 729 N.E.2d 768, 774-75 (Ohio Ct. App. 1999)).) They also claim that Texas and New York have concluded that punitive damages may not be recovered. However, the federal decisions cited by Appellants on this point did not actually address the specific question of whether punitive damages are available and instead indicated that fraudulent transfer laws generally have a remedial (as opposed to a punitive) purpose. See ASARCO LLC v. Americas Mining Corp., 404 B.R. 150, 161 (S.D. Tex. 2009); In re Best Prods. Co., 168 B.R. 35, 57 (Bankr. S.D.N.Y. 1994), appeal dismissed, 177 B.R. 791 (S.D.N.Y. 1995), aff'd, 68 F.3d 26 (2d Cir. 1995).

In the end, we believe that the Pennsylvania Supreme Court would reach the same result as the courts of Maine, Missouri, Ohio, and Utah.

Both the Seventh Circuit as well as the Missouri Court of Appeals have emphasized the expansive and open-ended nature of the statutory language at issue, especially the catch-all provision. Although it did not resolve the question (and the case was settled before the Indiana Supreme Court could decide the certified question, see Rose v. Mercantile Nat'l Bank of Hammond, 844 N.E.2d 1035, 1051 n.14 (Ind. Ct. App. 2008), aff'd in part and vacated in part on other grounds, 868 N.E.2d 772 (Ind. 2007)), the Seventh Circuit observed that the defendant—just like their counterparts in the current proceeding—argued that state law construes statutory remedies narrowly and only allows for punitive damages when the state legislature expressly includes them in the statute itself. DFS, 384 F.3d at 355. The Seventh Circuit

34

pointed out that "in none of the cases . . . did the statute in question contain anything like the catchall provision which is present in the IUFTA." Id. (citations omitted). On the contrary, "a straightforward reading of the IUFTA's catchall provision would seemingly allow for punitive damages." Id. at 354 (citing Ind. Code § 32-18-2-17(c)). As the Missouri Court of Appeal noted in Volk, "[t]his language does not evidence an intent to prohibit punitive damage awards," and it instead "expressly grants courts the authority to employ the full array of remedial measures insofar as they are warranted under the particular facts of the case." Volk, 58 S.W.3d at 900.

The DFS, Volk, and Locafrance courts likewise turned to pre-existing principles of law and equity. In certifying the question to the Indiana Supreme Court, the Seventh Circuit noted that the IUFTA "incorporates principles of state common law" and that, under Indiana law, tortious conduct involving malice, fraud, gross negligence, or oppressiveness may be punished by an award of punitive damages. DFS, 384 F.3d at 354 (citing Ind. Code § 32-18-2-20). Citing to Missouri's equivalent of Section 5110, the Missouri Court of Appeals similarly observed that the "[t]he UFTA therefore specifically incorporates pre-existing legal and equitable principles related to the law of fraudulent conveyances insofar as those principles do not conflict with the provisions of the UFTA." Volk, 58 S.W.3d at 900 (footnote omitted). Missouri law provides that punitive damages are available where a debtor intentionally effectuates a fraudulent transfer in order to shield his or her assets. Id. Applying the state's UFCA, the Ohio Supreme Court held that "common-law

35

remedies, including the law of fraud, may be applied when appropriate in fraudulent conveyance cases pursuant to R.C. 1336.11" because "the action herein is not specifically provided for in either of the remedy sections" and "R.C. 1336.11 allows that the rules of law and equity may govern." Locofrance, 451 N.E.2d at 1225. Previous Ohio case law, in turn, "has established that punitive damages and attorney's fees are permissible in cases of fraud involving malicious and intentional conduct." Id. In fact, the Colorado Court of Appeals in Morris and the Connecticut district court in Northern Tankers likewise relied on pre-existing legal and equitable principles to conclude that punitive damages are not available. See Northern Tankers, 968 F. Supp. at 67; Morris, 17 P.3d at 832. It is well established that, under Pennsylvania law, punitive damages may be awarded in cases of common law fraud, and we also predict that the Pennsylvania Supreme Court would hold that punitive damages are generally available in equitable actions. Pennsylvania's general principles of law and equity therefore more closely resemble the pre-existing state law principles discussed in Volk and Locafrance than in either Morris or Northern Tankers. See Volk, 58 S.W.3d at 900 n.3 ("Likewise, the Connecticut courts, while holding that punitive damages are not available under that state's UFTA, also relied upon pre-existing state law to inform their interpretation of the remedies available under the UFTA.").

In conclusion, we predict that, based on the language, nature, and purposes of the PUFTA as well as past case law, the Pennsylvania Supreme Court would conclude that punitive damages are available under the PUFTA.

36

## IV.

For the foregoing reasons, we will affirm the orders entered by the District Court.